82 U.S. 300
 21 L.Ed. 179
 15 Wall. 300
 CASE OF THE STATE TAX ON FOREIGN-HELD BONDS.
RAILROAD COMPANY
v.
PENNSYLVANIA.
 December Term, 1872
 
 1
 ERROR to the Supreme Court of Pennsylvania; the case being thus:
 
 
 2
 The plaintiff in error, in this case, the Cleveland, Painesville, and Ashtabula Railroad Company, was incorporated by an act of the legislature of Ohio, passed in 1848, and authorized to construct a railroad from the city of Cleveland, in that State, to the line of the State of Pennsylvania. Under this act and its supplement, passed in 1850, the road was constructed. By an act of the legislature of Pennsylvania, passed in 1854, the company was authorized to construct a railroad from the city of Erie, in that State, to the State line of Ohio, so as to connect with this road from Cleveland, and also to purchase a railroad already constructed between those points. This grant of authority was subject to various conditions, which the company accepted, and under its provisions the road between the points designated was constructed, or the one already constructed was purchased, and connected with the road from Cleveland, so that the two roads together formed one continuous line between the cities of Cleveland and Erie. The whole road between those places was ninety-five and a half miles in length, of which twenty-five miles and a half were situated in the State of Pennsylvania, and the rest, seventy miles, were situated in the State of Ohio. The company, so far as it acted in Pennsylvania under the authority of the act of her legislature, has been held by her courts to be a separate corporation of that State, and as such subject to her laws for the taxation of incorporated companies.[1] But there was only one board of directors who managed the affairs of both companies as one company, and had the entire control of the whole road between Cleveland and Erie.
 
 
 3
 In 1868 the funded debt of the company amounted to $2,500,000 and was in bonds of the company secured by three mortgages, one for $500,000, made in 1854, one for $1,000,000, made in 1859, and one for $1,000,000, made in 1867. Each of the mortgages was executed upon the entire road, from Erie, in Pennsylvania, to Cleveland, in Ohio, including the right of way and all the buildings and other property of every kind connected with the road. The principal and interest of the bonds first issued were payable in the city of Philadelphia; the principal and interest of the other bonds were payable in the city of New York. All the bonds were executed and delivered in Cleveland, Ohio, and nearly all of them were issued to, and have been ever since held and owned by non-residents of Pennsylvania and citizens of other States. The interest was at 7 per cent.
 
 
 4
 On the 1st of May, 1868, the legislature of the State of Pennsylvania passed an act entitled 'An act to revise, amend, and consolidate the several laws taxing corporations, brokers, and bankers;' the eleventh section of which provided as follows:
 
 
 5
 'The president, treasurer, or cashier of every company, except banks or savings institutions, incorporated under the laws of this Commonwealth, doing business in this State, which pays interest to its bondholders or other creditors, shall, before the payment of the same, retain from said bondholders or creditors, a tax of five per centum upon every dollar of interest paid as aforesaid; and shall pay over the same semi-annually, on the first days of July and January in each and every year, to the State treasurer for the use of the Commonwealth; and every president, treasurer, or cashier as aforesaid shall annually, on the thirty-first day of each December, or within thirty days thereafter, report to the auditor-general, under oath or affirmation, stating the entire amount of interest paid by said corporation to said creditors during the year ending on that day; and thereupon the auditor-general and State treasurer shall proceed to settle an account with said corporation as other accounts are now settled by law.'
 
 
 6
 The treasurer of the company, under this act, made a report in May, 1869, showing that during the previous year the company had paid interest on its funded debt of $2,500,000, at the rate of 7 per cent., amounting to $175,000. Upon this report the auditor-general and State treasurer 'settled an account' against the company, finding that it owed to the State the sum of $2336.50 for the tax on the interest which the company had paid.
 
 
 7
 In reaching this conclusion these officers apportioned the interest upon the debt owing by the company according to the length of the road, assigning to the part in the State of Pennsylvania an amount in proportion to the whole indebt edness which that part bears to the whole road. There was no law, however, in existence at the time directing or authorizing this proceeding.
 
 
 8
 From the settlement thus made the company appealed, under the law of the State, to the Court of Common Pleas of one of her counties, specifying various objections to the settlement, and among others substantially the following:
 
 
 9
 That the greater portion of the bonds of the company having been issued upon loans made and payable out of the State, to non-residents of Pennsylvania, citizens of other States, and being held by them, the act in question, in authorizing the tax upon the interest stipulated in the bonds, so far as it applied to the bonds thus issued and held, impaired the obligation of the contracts between the bondholders and the company, and is therefore repugnant to the Constitution of the United States, and void.
 
 
 10
 The contest in the Court of Common Pleas took the form of a regular judicial proceeding, a declaration having been filed by the attorney-general on behalf of the State against the company as for a debt and the company having joined issue by a plea of non-assumpsit and payment. The Common Pleas sustained the validity of the alleged tax against the objections of the company, and verdict and judgment passed in favor of the State. On error to the Supreme Court of the State of the judgment was affirmed, and the case is brought here for review under the second section of the amendatory Judiciary Act of 1867.
 
 
 11
 The judgment of the Supreme Court of Pennsylvania in the case now brought here, was rested, it may be well to say, upon a prior decision of that court; one made in Maltby v. Reading and Columbia Railroad Co.[2] That case was thus: An act of the legislature of Pennsylvania of April 29th, 1844, by its 32d section, laid a tax on 'mortgages, money owing by solvent debtors, whether by promissory notes, penal or single bill, bond or judgment;' and a following section required the commissioners of the county to assess a tax of three mills on every dollar of the value of property made liable by the 32d section to taxation. Several years prior to 1864, the Reading and Columbia Railroad Company, a corporation of Pennsylvania, issued bonds payable with semi-annual interest at 7 per cent. On the 30th of April, 1864, the legislature of Pennsylvania passed an act which required the president, &c., of any corporation which pays interest on which a State tax is imposed, 'before payment of the same to retain the State tax,' and pay the same to the treasurer of the State. Maltby, a holder of certain coupons, due before 1864, presented them to the railroad company for payment. The company insisted on retaining the tax of three mills on each dollar of the bonds. On suit by Maltby, a non-resident of Pennsylvania, he asserted that the tax on 'money owing by solvent debtors' was a tax on the debt in the hands of its holder, in other words, in the hands of the creditor, and not in the hands of the debtor; and that he, the holder in this case, being a non-resident of Pennsylvania, the debt followed his person and could not be taxed; moreover, that the tax, if it taxed the debt in the hands of the creditor, impaired the obligation of contracts. The Supreme Court of Pennsylvania decided all three points against Maltby, the creditor.
 
 
 12
 Woodward, C. J., for the said court, in answering the argument that the holder of the bond was a non-resident of the State, and the tax on the debt was therefore illegal, and the other argument, to wit, that the retention of the tax out of the coupon violated the obligation of a contract, said:
 
 
 13
 'As to the non-residence of the holder of the loan. It is undoubtedly true that the legislature of Pennsylvania cannot impose a personal tax upon the citizen of another State, but the constant practice is to tax property within our jurisdiction which belongs to non-residents. Our land taxes have always been imposed without regard to the domicile of the owner, and so have the taxes of stocks in banks and other incorporated companies. Stocks and loans are personal property, and the domicile of the owner determines the rights of succession to such property, though its situs at the time of his death determines the right of administration, but the legislative power of taxation does not depend upon these distinctions. There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised; but where the property is within our jurisdiction, and enjoys the protection of our State government, it is justly taxable, and it is of no moment that the owner who is required to pay the tax resides elsewhere. The duties of sovereign and subject are reciprocal, and any person who is protected by government in his person or property may be compelled to pay for that protection.
 
 
 14
 'The principle of taxation as the correlative of protection, perfectly just in itself, is as applicable to a non-resident as to a resident owner, because civil government is essential to give value to any form of property, without regard to the ownership, and taxation is indispensable to civil government. What would this plaintiff's loan be worth if it were not for the franchises conferred upon the company by the Commonwealth, franchises which are maintained and protected by the civil and military power of the Commonwealth? Is it not apparent that the intrinsic and ultimate value of the loan as an investment rests on State authority—that it is the State which made it property and preserves it as property? Then it would seem that this kind of property, more than any other, ought to contribute to the support of the State government. And I suppose it is upon this ground that the legislature discriminates between corporation loans and private debts as objects of taxation. The artificial debtor, itself a creature of the legislative power, and all its functions derived from legislative grant, is so dependent upon the government, it lives and moves and has its being so entirely by the favor of the government, that not only what it owns, but what it owes also, is thought fit to be taxed, whilst only the possessions of the natural person, and not his debts, are taxed.
 
 
 15
 'But, it may be said, and indeed was urged in argument, that the plaintiff's loan as personal property follows his person, and is property for all purposes only in the place where he has his domicile. For some purposes, as already intimated, it is undoubtedly subject to the law of the domicile, and yet in a very high sense it is also property here in Pennsylvania. It was admitted in argument that corporation stocks are property here though owned beyond our jurisdiction, and this is a necessary consequence of the final ruling which a long-vexed question in the Supreme Court of the United States received in the case of The Ohio and Mississippi Railroad Company v. Wheeler,[3] where it was held that stockholders in railroad companies become presumptively citizens of the State which creates the corporation. Property has been defined to be the right or interest which one has in lands or chattels, and so domestic is this peculiar species of property that it domesticates the owner. But loans are not stocks, and yet the loans and stock of a railroad company resemble each other in many respects. Both are subscribed under the authority of a special law, and both are so far capital that they are employed for the same general purposes. The certificate of stock, which the plaintiff as a citizen of Rhode Island may hold for shares in this company, is mere paper evidence of property existing here; it is not the thing signified, it is only evidence of it. Is the bond which the plaintiff holds anything more? He cannot enforce it where he lives; he must come here to gather its fruits. It is founded upon and derives its value from a mortgage, but that mortgage is here, and the franchises and properties which the mortgage binds are here within our jurisdiction. The bond signifies his right to receive so much money out of the mortgaged estate, but that estate not only belongs to our jurisdiction, but was in part created by our authority, and the power to raise the mortgage, like all the franchises of the company, was conferred by State authority.
 
 
 16
 'Now, although loans and stocks are distinguishable for many purposes, yet the legislature committed no very great solecism in treating loans as taxable property within our jurisdiction. The tax may be thought to be extravagant, especially in view of the taxation to which the owner is exposed in the place of his residence, but that is a consideration for legislative attention. The point we rule upon this part of the case is, that corporation loans, though in some sense mere debts, are like moneys at interest, taxable as property, and moneys at interest have long been taxed in Pennsylvania.
 
 
 17
 'Then, has the company the right to deduct the tax from the coupons? This, it is said, violates the faith of the obligation, and renders all such legislation void. How far modern tax laws shall be permitted to impair and alter private contracts is a great question, which must be decided ultimately by the Supreme Court of the United States. I have my own private opinions, which would probably be found to differ from a majority of this court. Perhaps the sound conclusion is that governmental taxation, a thing always to be anticipated when contracts are made, does not impair the obligation of contracts, within the meaning of the constitutional inhibition. If this be conceded as a principle, then the mode of collecting the tax, whether by a government agent, a debtor corporation or manufacturer, is mere machinery, and involves no principle whatever. For the present, therefore, and speaking for the court, I lay it down that the acts of Assembly, to which I have referred, are constitutional and valid; that they tax the loan as property found here in Pennsylvania, and that they appoint the debtor corporation the collector of that tax for the benefit of the State government.'
 
 
 18
 
 Messrs. J. E. Gowen and J. W. Simonton, for the plaintiff in error:
 
 
 
 19
 I. It being admitted in Maltby's case, above quoted, 'that the legislature of Pennsylvania cannot impose a personal tax upon the citizens of another State,' that is to say, we suppose, cannot impose on such citizens any tax assessed against them personally, the question is, whether debt due from a citizen of Pennsylvania to a citizen of New York is either actually or technically situated within the limits of the State of Pennsylvania? The Supreme Court of Pennsylvania holds that in the case of bonds issued by railroads, incorporated in Pennsylvania, it is. Now, of course, a debt has no actual or tangible situs; and the technical situs must necessarily be determined by some technical rule, maxim, or theory. But what rule, theory, or maxim refers the situs of a debt, viewed as personal property, to the domicile of the debtor and not that of the creditor? The general rule as to the situs of personal property undoubtedly is that it follows the person of the owner. Mobilia personam sequuntur is a legal axiom. No court more fully than the Supreme Court of Pennsylvania has declared, that the domicile of the owner is, for all purposes of taxation, the situs of choses in action and other intangible personal property. In McKeen v. The County of Northampton,[4] it was held that shares of stock in a corporation of another State, held by a citizen of Pennsylvania, were taxable in Pennsylvania. The court say:
 
 
 20
 'The defendant below being a citizen of this State, it is clear he is subject personally to its power to tax, and that all his property accompanying his person, or falling legitimately within the territorial jurisdiction of the State, is equally within the authority. The interest which an owner of shares has in the stock of a corporation is personal. Whithersoever he goes it accompanies him, and when he dies his domicile governs its succession.'
 
 
 21
 So in Short's Estate.[5] There Mr. Short, a resident of Philadelphia, owned a vast sum in stocks and corporations of other States, and bonds of the State of Kentucky, and a bank deposit in New York, but all were held to be subject to the Pennsylvania collateral inheritance tax. Gibson, C.J., says for the court:
 
 
 22
 'That Mr. Short's property out of the State subjected him to personal liability for tax assessed on it here in his lifetime is not to be doubted. The general rule is that the situs of personal property follows the domicile of the owner of it, insomuch that even a creditor cannot reach it in a foreign country, except by attachment or some other process provided by the local law; certainly not by a personal action without appearance or something equivalent to it.'
 
 
 23
 It may be that personal property which has an actual situs cannot be withdrawn from the taxing powers of the State within whose jurisdiction it is actually situated, but this can have no application to the intangible property known as choses in action, which have no actual situs, and can have no legal situs other than that of their owner. If it is a principle of general jurisprudence that a debt is property, having a taxable situs where the debtor resides, what are the consequences? Necessarily that the extent to which the taxing power of a State may be applied to debts due from its citizens to non-residents can have no limit, except that of the debts themselves. 'It is admitted,' said Marshall, C.J., in McCulloch v. The State of Maryland,[6] 'that the power of taxing the people and their property is essential to the very existence of the government, and may be legitimately exercised on the objects to which it is applicable, to the utmost extent to which the government may choose to carry it. The only security against the abuse of this power is found in the government itself. In imposing a tax, the legislature acts upon its constituents. This is, in general, a sufficient security against erroneous and oppressive taxation.' But the legislature does not act upon its constituents when it taxes the income of non-resident foreigners. They have not 'the influence of the constituents over their representatives,' referred to by Chief Justice Marshall; and it is not going too far to say that that influence is not likely to be exerted against the imposition of a tax which relieves the constituents themselves from a burden which they would otherwise have to bear. Considerations of comity would avail but little against the material advantages offered by such a system of taxation. Retaliation by other States or sovereignties, if effective, might induce a conviction of its impolicy, if not of its injustice; but other States or sovereignties might not be in a position to retaliate with effect. The State of Pennsylvania would hardly be deterred from taxing the money due by her corporations to citizens of Great Britain, by the levy of a retaliatory tax in Great Britain upon all money due by British corporations to citizens of Pennsylvania. But it is especially in a country like ours—composed of so many States independent in sovereignty, but yet so closely connected by the commercial relations of their citizens—that the evils of this new theory of taxation would be most severely felt. Could New York be expected to submit patiently to taxation by Pennsylvania of all money owing by citizens of the latter State to citizens of the former? What would be though of an attempt on the part of the State of Pennsylvania to hold citizens of New York personally responsible for the payment of taxes assessed on the debts due them by the citizens of Pennsylvania?
 
 
 24
 When we remember, too, that the choses in action, the debts due to a citizen, are always taxable in the jurisdiction within which he is domiciled, the taxation of this species of property in other jurisdictions not only imposes an intolerable burden upon the taxpayer, but impairs the resources from which the revenue of the State of which he is a citizen is derived. The bonds of corporations of other States form no inconsiderable portion of the wealth of citizens of many of the States; but this wealth may be destroyed by taxation in the States where the business of the corporations is carried on Nor is such a result improbable. Many corporations owe their corporate existence to the concurrent legislation of several States; and if each State should tax the non-resident creditors of the corporation, even at the same rate at which resident creditors are taxed, the accumulation of taxes might well destroy the value of the property taxed. The Philadelphia, Wilmington, and Baltimore Railroad Company is chartered by the States of Pennsylvania, Maryland, and Delaware. It has issued many bonds at 6 per cent. interest. Those bonds are held to a large extent in Massachusetts. Suppose that each of the three States just named should require a tax of 2 per cent. on the par value of the principal of these loans, to be deducted from the 6 per cent. interest due to the Massachusetts holders, what would be the value of their securities, either to themselves or to the State of Massachusetts? If every State within whose territory one or more of the numerous railroads worked by the Pennsylvania Railroad Company happen to lie, should insist upon its right to levy a tax upon the interest paid by that corporation to its non-resident creditors, as an equivalent for the protection afforded by the laws of the State to the operations of the company, the officers of the company might, after retaining the whole interest from the creditors, be compelled to solve the difficult problem of dividing the whole into parts greater in the aggregate than the whole.
 
 
 25
 II. The section of the act in question of Pennsylvania, so far as it provides for the collection of a tax from interest due to citizens and residents of other States, conflicts with the clause of the Constitution which declares that 'the citizens of each State shall be entitled to all provileges and immunities of citizens in the several States.'[7]
 
 
 26
 In Ward v. Maryland,[8] the right 'to be exempt from any higher taxes or excises than are imposed by the State upon its own citizens,' is said to be one of the privileges and immunities 'plainly and unmistakably' secured and protected by this clause of the Constitution. Now does this act really subject the citizens of other States to taxation, from which the citizens of Pennsylvania are exempt? Prim a facie, this might not seem to be so; since the act requires the tax to be collected from all creditors to whom interest is payable by corporations, without regard to their citizenship or residence. But this equality is apparent only; since, unlike the Pennsylvania creditors, the creditors who are citizens of other States receive no equivalent for the taxes which they are compelled to pay, and are taxed on account of their ownership of property which is neither actually nor legally situate in the State of Pennsylvania. The civil rights of a New York creditor of a Pennsylvania corporation are not protected by the State of Pennsylvania, and why should he be required to contribute a part of the expense of maintaining the government of that State? It is idle to say that the State of Pennsylvania accords to him the right to sue in her courts; a similar right is accorded to foreigners by every civilized community on the face of the earth; but no one ever supposed that non-resident foreigners were thereby rendered taxable under the laws of each community which recognized such a right.
 
 
 27
 The levy of a tax by the British government upon either the persons or property of citizens of the United States, as an equivalent for the right of citizens of the United States to sue in the courts of Great Britain, would hardly be submitted to; and yet the wrong done would not be of so aggravated a character as that which would result from the imposition of a tax by the State of Pennsylvania upon the persons or property of the citizens of other States of this Union for the privilege of suing in the courts of Pennsylvania. This must be apparent, when it is considered that the Constitution of the United States, in securing to the citizens of each State all the privileges and immunities of citizens in the several States, undoubtedly secures the right to sue in the courts of the respective States; that this right can neither be withheld by any State, nor made the pretext for taxing the persons upon whom it has been conferred, and that citizens of other States are not obliged to pursue their claims to the courts of the respective States in which their debtors reside, but can always have ample remedy in the courts of the United States.
 
 
 28
 It is not of course meant to be contended that the property of non-residents actually within the State should be exempt from taxation. A citizen of New York has no reason to complain if his real estate or his merchandise in Pennsylvania is taxed to support the government which protects it. He receives an equivalent for the tax; and if the ownership of the property does not entitle him to representation in the legislature of Pennsylvania, it is because property in Pennsylvania, no matter to whom belonging, is not entitled to representation. But if, as we submit is true, a debt due from a citizen of Pennsylvania is neither actually nor theoretically property in Pennsylvania, the taxation of such a debt as against a New York creditor is taxation without protection of either the taxpayer's person or property, and without representation; and no citizen of Pennsylvania is, under such circumstances, taxed by the law of Pennsylvania.
 
 
 29
 III. The section, so far as it provides for the collection of a tax from interest due to citizens and residents of other States, impairs the obligation of the contracts between the railroad company and such citizens and residents of other States, and is therefore repugnant to the Constitution of the United States and void. It requires the officers of the debtor corporation to withhold a part of the interest stipulated to be paid to such citizens of other States, and to pay the same into the treasury of the State.
 
 
 30
 A tax law, therefore, which does accomplish this result impairs the obligation of a contract, and is prohibited by the Constitution, and the only question in the case is, was the none-resident citizen of another State, whose rights under the contract are affected, so situated with relation to the law-making power, that he was bound to anticipate, and contract with reference to, the passage of such a law?
 
 
 31
 It may well be that all citizens of any given State, in entering into contracts to be performed within such State, are bound to have regard to the laws of the State, then in force, which relate to or bear upon the subject; as well as to the fact that there are certain classes of laws, such as tax laws and police laws, which may be constitutionally applied to prior contracts; but a citizen of one State, entering into a contract lawful in his own State, which is to be performed there, is not bound in contracting to have any reference to the laws of another State, present or future, whether they be tax laws or laws of any other kind.
 
 
 32
 An illustration of this principle is given in the effect of State insolvent laws. Thus, citizens of a given State, entering into a contract to be performed in such State, are bound by the fact of the existence of an insolvent law; but one who is a citizen of another State, even though contracting in the State where such law exists, with one of its citizens, is not bound to have any regard to such law, and his rights cannot be affected by it, owing to the clause in the Constitution of the United States prohibiting any State from passing any law impairing the obligation of contracts. The State law has no jurisdiction over him, and his contract is not affected by it, because he is not a citizen of such State. This was adjudged in Ogden v. Saunders,[9] and in Baldwin v. Hale.[10]
 
 
 33
 In Baldwin v. Hale the principle of Ogden v. Saunders was affirmed and applied to the case of a debt not only contracted, but expressly made payable, in the State in which the debtor resided, and where he afterwards obtained his discharge as an insolvent.
 
 
 34
 It would seem plain that the principle on which these decisions are based applies a fortiori to State tax laws. The argument that the obligation of a contract should be regulated by the law of the place where the contract was made, and where one of the contracting parties resides, and still continues to reside, is not without plausibility. But what can be said in favor of extending the operation of the tax laws of a State to citizens of other States who happen to have debtors residing in the State which imposes the tax? Such a theory has no foundation, either in the practice of civilized nations or in the speculative opinions of juridical writers.
 
 
 35
 IV. But it is said, by the Supreme Court of Pennsylvania, that though the bondholder is beyond the jurisdiction of the State, his property, when the bond is secured by a mortgage, is within it.
 
 
 36
 But he does not own the property of the corporation which owes him the money, nor anything that has an actual situs within the State. The property mortgaged belongs to the debtor. It is as well settled as anything can be, in Pennsylvania, whatever the doctrine may be elsewhere, that a mortgage is only a lien or incumbrance on the land mortgaged, and that the mortgagee has no estate in the land.
 
 
 37
 If the non-resident creditor own neither the land bound nor the money lent, but merely the bond and mortgage, the choses in action which follow the person of the owner, and are actually in his possession without the State, we submit that he owns nothing within the jurisdiction of the State. Neither does he need, as has been argued, to invoke the aid of the courts of the State to reap the fruits of his security in case of the non-payment of the interest or principal of the bonds. The courts of the United States have ample jurisdiction and power to give the non-resident bondholder all the judicial aid he may need.
 
 
 38
 These considerations have led the courts of those States where this question has been raised, to decide in favor of the position taken by the plaintiff in error.[11]
 
 
 39
 V. The case of Maltby v. Reading and Columbia Railroad, if it were rightly decided and of authority in this court, has slight bearing on the question of a violation of a contract. There the law laying the tax was in force when the bond was issued. Here it was not. The tax here is not laid under the act there referred to of 1844 (the three mills tax), but under a different law, one of 1868, and passed after the bond was issued. The tax is a tax of 5 per cent. on the interest; which, on a 7 per cent. bond, which these bonds were, gives a different result from one of three mills on the dollar of principal.
 
 
 40
 
 Messrs. F. Carroll Brewster and J. W. M. Newlin, contra:
 
 
 
 41
 The opinion of the Supreme Court of Pennsylvania in Maltby's case presents our views so forcibly that all that we can say will add little to its argument. Still we may say:
 
 
 42
 1. The place of residence of the bondholders is quite unimportant. The tax does not discriminate against non-residents, and further, it is levied neither on the security—the road—nor on the chose in action—the bond,—but upon the interest payable by the defendant, a Pennsylvania corporation, which it is directed to withhold and pay to the State. This interest-money is in the actual possession of the corporation, and it is undeniable that it might be made a garnishee and the money be attached in its hands by the creditors of the bondholers. Even if the tax were directly upon the chose in action the proposition advanced by the plaintiff in error, that the thing taxed has no situs of its own, but follows the domicile of the non-resident holder and cannot be taxed elsewhere, is founded on a fiction of law which is not applicable to the questions of taxation.
 
 
 43
 In Green v. Van Buskirk,[12] this court, speaking of the situs of personal property, said:
 
 
 44
 'But this fiction is by no means of universal application, and as Judge Story says, 'yields whenever it is necessary for the purpose of justice that the actual situs of the thing should be examined;' . . . and always yields to laws for attaching the estate of non-residents, because such laws necessarily assume that property has a situs entirely distinct from the owner's domicile.'
 
 
 45
 In Catlin v. Hull,[13] one H., who resided in New York, owned certain property, consisting of debts due from solvent debtors, resident in Vermont, evidenced by promissory notes; and he appointed the plaintiff, who was also a resident of Vermont, his agent, to control and manage the property, and collect and re-lend from time to time, as he should think proper, and allowed the plaintiff a specified salary for so doing. It was held that the legislature of this State had power to enact a law, subjecting property so situated to taxation, and that the property was taxable under the statute of the State. The court say:
 
 
 46
 'It is insisted that the property of Hammond, of which the plaintiff has the care, as his agent, cannot be considered as legally existing in this State, and that this is an attempt to tax property when neither the property nor the owner is within the State, and within the jurisdiction of our laws. We think, however, that this doctrine is quite too refined and artificial to be put to any practical use.
 
 
 47
 'It is undoubtedly true that, by the general acknowledged principles of public law, personal chattels follow the person of the owner, and that upon his death they are to be distributed according to the law of his domicile, and in general any conveyance of chattels, good by the law of his own domicile, will be good elsewhere. But this rule is merely a legal fiction, adopted from considerations of general convenience and policy, for the benefit of commerce, and to enable persons to dispose of their property at their decease, agreeably to their wishes, without being embarrassed by their want of knowledge in relation to the laws of the country where the same is situated. But even this doctrine is to be received and understood with this limitation, that there is no positive law of the country where the property is in fact, which contravenes the law of his domicile, for if there is, the law of the owner's domicile must yield to the law of the State where the property is in fact situate. We do not consider this doctrine in relation to the situs of personal chattels, and relating to its transfer and distribution, as at all conflicting with the actual jurisdiction of the State where it is situate, over it, or with their right to subject it, in common with other property of the State, to share the burden of the government by taxation.'
 
 
 48
 2. The Pennsylvania acts do not impair the obligation of the contract of the company with its bondholders. The corporation pays no less interest, but a part of it is diverted to the State as a tax on the bondholder, who is made, in common with the citizens of the State, to pay for the value given to his property here through the grant of the franchises of the corporation and the protection afforded to it by the State.
 
 
 49
 Mr. Justice FIELD, after stating the facts of the case, delivered the opinion of the court as follows:
 
 
 50
 The question presented in this case for our determination is whether the eleventh section of the act of Pennsylvania of May, 1868, so far as it applies to the interest on bonds of the railroad company, made and payable out of the State, issued to and held by non-residents of the State, citizens of other States, is a valid and constitutional exercise of the taxing power of the State, or whether it is an interference, under the name of a tax, with the obligation of the contracts between the non-resident bondholders and the corporation. If it be the former, this court cannot arrest the judgment of the State court; if it be the latter, the alleged tax is illegal, and its enforcement can be restrained.
 
 
 51
 The case before us is similar in its essential particulars to that of The Railroad Company v. Jackson, reported in 7th Wallace. There, as here, the company was incorporated by the legislatures of two States, Pennsylvania and Maryland, under the same name, and its road extended in a continuous line from Baltimore in one State to Sunbury in the other. And the company had issued bonds for a large amount, drawing interest, and executed a mortgage for their security upon its entire road, its franchises and fixtures, including the portion lying in both States. Coupons for the different instalments of interest were attached to each bond. There was no apportionment of the bonds to any part of the road lying in either State. The whole road was bound for each bond. The law of Pennsylvania, as it then existed, imposed a tax on money owing by solvent debtors of three mills on the dollar of the principal, payable out of interest. An alien resident in Ireland was the holder of some of the bonds of the railroad company, and when he presented his coupons for the interest due thereon, the company claimed the right to deduct the tax imposed by the law of Pennsylvania, and also an alleged tax to the United States. The non-resident refused to accept the interest with these deductions, and brought suit for the whole amount in the Circuit Court of the United States for the District of Maryland. That court, the chief justice presiding, instructed the jury that if the plaintiff, when he purchased the bonds, was a British subject, resident in Ireland, and still resided there, he was entitled to recover the amount of the coupons without deduction. The verdict and judgment were in accordance with this instruction, and the case was brought here for review.
 
 
 52
 This court held that the tax under the law of Pennsylvania could not be sustained, as to permit its deduction from the coupons held by the plaintiff would be giving effect to the acts of her legislature upon property and effects lying beyond her jurisdiction. The reasoning by which the learned justice, who delivered the opinion of the court, reached this conclusion, may be open, perhaps, to some criticism. It is not perceived how the fact that the mortgage given for the security of the bonds in that case covered that portion of the road which extended into Maryland could affect the liability of the bonds to taxation. If the entire road upon which the mortgage was given had been in another State, and the bonds had been held by a resident of Pennsylvania, they would have been taxable under her laws in that State. It was the fact that the bonds were held by a non-resident which justified the language used, that to permit a deduction of the tax from the interest would be giving effect to the laws of Pennsylvania upon property beyond her jurisdiction, and not the fact assigned by the learned justice. The decision is, nevertheless, authority for the doctrine that property lying beyond the jurisdiction of the State is not a subject upon which her taxing power can be legitimately exercised. Indeed, it would seem that no adjudication should be necessary to establish so obvious a proposition.
 
 
 53
 The power of taxation, however vast in its character and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property, and business. Whatever form taxation may assume, whether as duties, imposts, excises, or licenses, it must relate to one of these subjects. It is not possible to conceive of any other, though as applied to them, the taxation may be exercised in a great variety of ways. It may touch property in every shape, in its natural condition, in its manufactured form, and in its various transmutations. And the amount of the taxation may be determined by the value of the property, or its use, or its capacity, or its productiveness. It may touch business in the almost infinite forms in which it is conducted, in professions, in commerce, in manufactures, and in transportation. Unless restrained by provisions of the Federal Constitution, the power of the State as to the mode, form, and extent of taxation is unlimited, where the subjects to which it applies are within her jurisdiction.
 
 
 54
 Corporations may be taxed, like natural persons, upon their property and business. But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense; they are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations, belongs to the creditors, to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement.
 
 
 55
 The bonds issued by the railroad company in this case are undoubtedly property, but property in the hands of the holders, not property of the obligors. So far as they are held by non-residents of the State, they are property beyond the jurisdiction of the State. The law which requires the treasurer of the company to retain five per cent. of the interest due to the non-resident bondholder is not, therefore, a legitimate exercise of the taxing power. It is a law which interferes between the company and the bondholder, and under the pretence of levying a tax commands the company to withhold a portion of the stipulated interest and pay it over to the State. It is a law which thus impairs the obligation of the contract between the parties. The obligation of a contract depends upon its terms and the means which the law in existence at the time affords for its enforcement. A law which alters the terms of a contract by imposing new conditions, or dispensing with those expressed, is a law which impairs its obligation, for, as stated on another occasion, such a law relieves the parties from the moral duty of performing the original stipulations of the contract, and it prevents their legal enforcement. The Act of Pennsylvania of May 1st, 1868, falls within this description. It directs the treasurer of every incorporated company to retain from the interest stipulated to its bondholders five per cent. upon every dollar and pay it into the treasury of the Commonwealth. It thus sanctions and commands a disregard of the express provisions of the contracts between the company and its creditors. It is only one of many cases where, under the name of taxation, an oppressive exaction is made without constitutional warrant, amounting to little less than an arbitrary seizure of private property. It is, in fact, a forced contribution levied upon property held in other States, where it is subjected, or may be subjected, to taxation upon an estimate of its full value.
 
 
 56
 The case of Maltby v. The Reading and Columbia Railroad Company, decided by the Supreme Court of Pennsylvania in 1866, was referred to by the Common Pleas in support of its ruling, and is relied upon by counsel in support of the tax in question. The decision in that case does go to the full extent claimed, and holds that bonds of corporations held by non-residents are taxable in that State. But it is evident from a perusal of the opinion of the court that the decision proceeded upon the idea that the bond of the non-resident was itself property in the State because secured by a mortgage on property there. 'It is undoubtedly true,' said the court, 'that the legislature of Pennsylvania cannot impose a personal tax upon the citizen of another State, but the constant practice is to tax property within our jurisdiction which belongs to non-residents.' And again: 'There must be jurisdiction over either the property or the person of the owner, else the power cannot be exercised; but when the property is within our jurisdiction, and enjoys the protection of our State government, it is justly taxable, and it is of no moment that the owner, who is required to pay the tax, resides elsewhere.' There is no doubt of the correctness of these views. But the court then proceeds to state that the principle of taxation as the correlative of protection is as applicable to a non-resident as to a resident; that the loan to the non-resident is made valuable by the franchises which the company derived from the Commonwealth, and as an investment rests upon State authority, and, therefore, ought to contribute to the support of the State government. It also adds that, though the loan is for some purposes subject to the law of the domicile of the holder, 'yet, in a very high sense,' it is also property in Pennsylvania, observing, in support of this position, that the holder of a bond of the company could not enforce it except in that State, and that the mortgage given for its security was upon property and franchises within her jurisdiction. The amount of all which is this: that the State which creates and protects a corporation ought to have the right to tax the loans negotiated by it, though taken and held by non-residents, a proposition which it is unnecessary to controvert. The legality of a tax of that kind would not be questioned if in the charter of the company the imposition of the tax were authorized, and in the bonds of the company, or its certificates of loan, the liability of the loan to taxation were stated. The tax in that case would be in the nature of a license tax for negotiating the loan, for in whatever manner made payable it would ultimately fall on the company as a condition of effecting the loan, and parties contracting with the company would provide for it by proper stipulations. But there is nothing in the observations of the court, nor is there anything in the opinion, which shows that the bond of the non-resident was property in the State, or that the non-resident had any property in the State which was subject to taxation within the principles laid down by the court itself, which we have cited.
 
 
 57
 The property mortgaged belonged entirely to the company, and so far as it was situated in Pennsylvania was taxable there. If taxation is the correlative of protection, the taxes which it there paid were the correlative for the protection which it there received. And neither the taxation of the property, nor its protection, was augmented or diminished by the fact that the corporation was in debt or free from debt. The property in no sense belonged to the non-resident bondholder or to the mortgagee of the company. The mortgage transferred no title; it created only a lien upon the property. Though in form a conveyance, it was both at law and in equity a mere security for the debt. That such is the nature of a mortgage in Pennsylvania has been frequently ruled by her highest court. In Witmer's Appeal[14] the court said: 'The mortgagee has no estate in the land, any more than the judgment creditor. Both have liens upon it, and no more than liens.' And in that State all possible interests in lands, whether vested or contingent, are subject to levy and sale on execution, yet it has been held, on the ground that a mortgagee has no estate in the lands, that the mortgaged premises cannot be taken in execution for his debt. In Rickert v. Madeira,[15] the court said: 'A mortgage must be considered either as a chose in action or as giving title to the land and vesting a real interest in the mortgagee. In the latter case it would be liable to execution; in the former it would not, as it would fall within the same reason as a judgment bond or simple contract. If we should consider the interest of the mortgagee as a real interest, we must carry the principle out and subject it to a dower and to the lien of a judgment; and that it is but a chose in action, a mere evidence of debt, is apparent from the whole current of decisions.'[16]
 
 
 58
 Such being the character of a mortgage in Pennsylvania, it cannot be said, as was justly observed by counsel, that the non-resident holder and owner of a bond secured by a mortgage in that State owns any real estate there. A mortgage being there a mere chose in action, it only confers upon the holder, or the party for whose benefit the mortgage is given, a right to proceed against the property mortgaged, upon a given contingency, to enforce, by its sale, the payment of his demand. This right has no locality independent of the party in whom it resides. It may undoubtedly be taxed by the State when held by a resident therein, but when held by a non-resident it is as much beyond the jurisdiction of the State as the person of the owner.
 
 
 59
 It is undoubtedly true that the actual situs of persona property which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of State bonds and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner; the latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners.
 
 
 60
 Cases were cited by counsel on the argument from the decisions of the highest courts of several States, which accord with the views we have expressed. In Davenport v. The Mississippi and Missouri Railroad Company,[17] the question arose before the Supreme Court of Iowa whether mortgages on property in that State held by non-residents could be taxed under a law which provided that all property, real and personal, within the State, with certain exceptions not material to the present case, should be subject to taxation, and the court said:
 
 
 61
 'Both in law and equity the mortgagee has only a chattel interest. It is true that the situs of the property mortgaged is within the jurisdiction of the State, but, the mortgage itself being personal property, a chose in action, attaches to the person of the owner. It is agreed by the parties that the owners and holders of the mortgages are non-residents of the State. If so, and the property of the mortgage attaches to the person of the owner, it follows that these mortgages are not property within the State, and if not they are not the subject of taxation.'
 
 
 62
 In People v. Eastman,[18] the question arose before the Supreme Court of California whether a judgment of record in Mariposa County upon the foreclosure of a mortgage upon property situated in that county could be taxed there, the owner of the judgment being a resident of San Francisco, and the law of California requiring all property to be taxed in the county where situated; and it was held that it was not taxable there. 'The mortgage,' said the court, 'has no existence independent of the thing secured by it; a payment of the debt discharges the mortgage. The thing secured is intangible, and has no situs distinct and apart from the residence of the holder. It pertains to and follows the person. The same debt may, at the same time, be secured by a mortgage upon land in every county in the State; and if the mere fact that the mortgage exists in a particular county gives the property in the mortgage a situs subjecting it to taxation in that county, a party, without further legislation, might be called upon to pay the tax several times, for the lien for taxes attaches at the same time in every county in the State, and the mortgage in one county may be a different one from that in another, although the debt secured is the same.'
 
 
 63
 Some adjudications in the Supreme Court of Pennsylvania were also cited on the argument, which appear to recognize doctrines inconsistent with that announced in Maltby v. Reading and Columbia Railroad Company, particularly the case of McKeen v. The County of Northampton,[19] and the case of Short's Estate,[20] but we do not deem it necessary to pursue the matter further. We are clear that the tax cannot be sustained; that the bonds, being held by non-residents of the State, are only property in their hands, and that they are thus beyond the jurisdiction of the taxing power of the State. Even where the bonds are held by residents of the State the retention by the company of a portion of the stipulated interest can only be sustained as a mode of collecting a tax upon that species of property in the State. When the property is out of the State there can then be no tax upon it for which the interest can be retained. The tax laws of Pennsylvania can have no extra-territorial operation; nor can any law of that State inconsistent with the terms of a contract, made with or payable to parties out of the State, have any effect upon the contract whilst it is in the hands of such parties or other non-residents. The extra-territorial invalidity of State laws discharging a debtor from his contracts with citizens of other States, even though made and payable in the State after the passage of such laws, has been judicially determined by this court.[21] A like invalidity must, on similar grounds, attend State legislation which seeks to change the obligation of such contracts in any particular, and on stronger grounds where the contracts are made and payable out of the State.
 
 
 64
 JUDGMENT REVERSED, and the cause remanded for further proceedings,
 
 
 65
 IN CONFORMITY WITH THIS OPINION.
 
 
 66
 Mr. Justice DAVIS, with whom concurred Justices CLIFFORD, MILLER, and HUNT, dissenting.[22]
 
 NOTE.
 
 67
 At the same time with the adjudication as to the tax in the preceding case was adjudged the validity of the tax in the cases of two other railroad companies, to wit: The Pittsburg, Fort Wayne, and Chicago; and the Delaware, Lackawanna, and Western, both writs of error against the State of Pennsylvania, and to judgments of the Supreme Court of that State. The tax levied in these last two cases upon the bonds of non-residents of the State was three mills on the dollar of capital, to be paid out of the interest; and the law laying the tax, a law of 1844, was in existence when the bonds were issued. In the previous case it will be remembered that the tax levied was five per cent. upon the interest of the bonds, and the law levying it was not in such existence. The last two cases, therefore, resembled the case of Maltby v. Reading and Columbia Railroad, the particulars of which are stated supra.*
 
 
 68
 Mr. Justice FIELD, who delivered the judgment of the court, in the additional two cases now mentioned, as in the first one, said that the cases involved the same questions that had been considered and decided in the previous case, that of the Cleveland, Painesville, and Ashtabula Railroad; and that 'the difference in the mode of the assessment of the tax did not affect the principle decided.'
 
 
 69
 Upon the authority of the case cited, the judgments in these two cases, now mentioned, were accordingly REVERSED, and the causes remanded for further proceedings, Justices CLIFFORD, MILLER, DAVIS, and HUNT dissenting; and Mr. Justice DAVIS saying, for himself and them, in all the cases, as follows:
 
 
 70
 'I cannot agree to the opinion of a majority of my brethren in these cases. That the tax in question is valid and binding, both on the corporation and its creditor, is clearly settled in Maltby v. The Philadelphia and Reading Railroad Company, and that, too, whether the creditor resides in Pennsylvania or elsewhere. As the highest court of the State has decided that the act of 1844 authorized the imposition of the tax in controversy, and as that act was in force when the bonds and mortgages were issued, I cannot see how any principle of the Federal Constitution is violated, nor can I see how this court can reach the conclusion it does in these cases without denying to the State government the right to construe its own local laws. This right has been recognized so often and in such a variety of ways, that it is no longer an open question. Indeed this court in Railroad Company v. Jackson has expressly recognized the binding force of the construction which the Supreme Court in Pennsylvania has put on the act of 1844. Mr. Justice Nelson, delivering the opinion of the court, said:
 
 
 71
 "It has been argued for the plaintiff, that the acts of the legislature of Pennsylvania, when properly interpreted, do not embrace the bonds or coupons in question; but it is not important to examine the subject, for it is not to be denied, as the courts of the State have expounded these laws, that they authorized the deduction, and, if no other objection existed against the tax, the defence would fail.' 'I am also of opinion, that a State legislature is not restrained by anything in the Federal Constitution nor by any principle which this court can enforce against the State court, from taxing the property of persons which it can reach and lay its hands on, whether these persons reside within or without the State.'
 
 
 
 [1]
 29 Pennsylvania State, 781.
 
 
 [2]
 52 Pennsylvania State, 140.
 
 
 [3]
 1 Black, 286.
 
 
 [4]
 49 Pennsylvania State, 519.
 
 
 [5]
 16 Id. 63.
 
 
 [6]
 4 Wheaton, 428.
 
 
 [7]
 Section 2, Article 4.
 
 
 [8]
 2 Wallace, 418.
 
 
 [9]
 12 Wheaton, 213.
 
 
 [10]
 1 Wallace, 223.
 
 
 [11]
 See State of Nevada v. Earl, 1 Nevada State, 397; Davenport v. The Mississippi and Missouri Railroad Co., 12 Iowa, 539; The State v. Ross, 3 Zabriskie, 517; People v. Eastman, 25 California, 603.
 
 
 [12]
 7 Wallace, 139; and see St. Louis v. The Ferry Company, 11 Wallace, 428.
 
 
 [13]
 21 Vermont, 158; and see Hyot v. Tax Commissioners, 23 New York, 226, 230, p. 232-3; City of New Albany v. Meekin, 3 Indiana, 481; Faxton v. McCosh, 12 Iowa, 529; Taylor, Admr. v. St. Louis County Court, 47 Missouri, 594; People v. Home Insurnace Company, 29 California, 533; People v. Gardner, 51 Barbour, 352.
 
 
 [14]
 45 Pennsylvania State, 463.
 
 
 [15]
 1 Rawle, 329.
 
 
 [16]
 Wilson v. Shoenberger's Executors, 31 Pennsylvania State, 295.
 
 
 [17]
 12 Iowa, 539.
 
 
 [18]
 25 California, 603.
 
 
 [19]
 49 Pennsylvania State, 519.
 
 
 [20]
 16 Id. 63.
 
 
 [21]
 Ogden v. Saunders, 12 Wheaton, 214; Baldwin v. Hale, 1 Wallace, 223.
 
 
 [22]
 See their opinion, infra, note following, pp. 327-8.
 
 
 *
 Pp. 303-307.