BARRETT, J.
The question here is whether the balance due the decedent at the time of his death, resulting from deposits made by him individually in a trust account which, as trustee under the will of Edmund Husson, deceased, he had opened in the Farmers’ Loan & Trust- Company of this city, was “property” of the decedent “within this state,” within the meaning of taxable transfers act (Laws 1892, c. 399, § 1, subd. 2.) It is well settled that the legal relation which existed- between the decedent, as such trustee, and the Farmers’ Loan.& Trust Company, was that of debtor and creditor. The deposits became the property of the trust company, and thereupon the company became indebted to the depositor for the amount so. deposited. Here, however, even this decision existed only between the decedent in his representative capacity (as trustee under the will of Edward Husson) and the company. Individually, he occupied no contract relation towards the company. His individual deposits simply went to swell the trust account. Ordinarily, it would have required an accounting . in equity to separate the individual from the trust deposits, and to appropriate the general bank balance in accordance with just principles. Here this separation was amicably arranged between the *785 decedent’s estate and the trust estate, but this was merely a friendly substitute for an accounting. Precisely what the decedent had, individually, within this state was a right to an accounting in equity with regard to a debt due by the company to himself as Hus-son’s trustee. We do not think that the debt was properly within -this state, within the meaning of the taxable transfers act. Much less was the right to an accounting with respect to such debt. It is provided, by section 22 of the act in question, that the word “property” as used therein, shall “include all property or interest therein, whether situated within or without the state, over which this state has any jurisdiction for the purposes of taxation,’—no more, and no less; not property generally, it will be observed; not even property as defined by the statutory construction act, passed later in the season of 1892, for much of what is within its definitions is property over which the state cannot, as against nonresidents, have any jurisdiction, Thus, the act is in harmony with the authorities which hold that the power of taxation of a state is limited to persons, property, and business within her jurisdiction. Foreign Bond Case, 15 Wall. 300. This jurisdiction, however, is not what the state may choose to assert, but what, as matter of fact, it possesses. Here, for instance, this state has no jurisdiction over the person of the decedent. He was, in fact, a nonresident of this state. It does not appear that he transacted business within this state. So the jurisdiction upon that head was also lacking. The question remains as to his property. It was distinctly held, in the Foreign Bond Case, supra, that debts have no situs independent of the domicile of the creditor, and that such debts are the property of the creditor, and follow his domicile. It is of no moment, in the application of this rule, where the debtor resides or does business, or where he may be found. A debt can have no locality separate from the party to whom it is due. The debt there was evidence by the bonds of a domestic corporation; but, as such bonds were not within the taxing state, as, in fact, they were in the actual possession of the owner at his foreign domicile, the supreme court of the United States held that the property evidenced thereby was not within the taxing state, and was not taxable there.
Thus, clearly, this state had no jurisdiction, for the purposes of taxation, over the right in action here possessed by the decedent. It asserted no such jurisdiction in the act in question, nor could it have done so. Its jurisdiction, so far as nonresidents decedents were concerned, was limited to property which had a visible and tangible existence. As to visible and tangible property, the fiction of a legal situs at the domicile of the owner gives way to the fact of the actual situs. With regard to ehoses in action, however, and intangible property generally, the legal situs is, to all intents and purposes, the actual situs. People v. Commissioners of Taxes, 23 N. Y. 224. The debtor is not the debt, and jurisdiction over the debtor is not, for the purposes of taxation, jurisdiction over his obligation. There is jurisdiction to attach, but not to tax, the debt. The right to attach proceeds upon the jurisdiction over the resident debtor. There is jurisdiction to compel *786 such debtor to pay what he owes his creditor to the latter’s creditor. In that case the attachment does not create the obligation. It enforces it. The tax, however, creates the liability, and also-enforces. it. That can only he done when the person or the-property of the creditor is within the jurisdiction. The state-cannot create a liability in its own favor against the nonresident, creditor by the mere exercise of jurisdiction over the resident', debtor. It can enforce an existing liability, but it cannot create one. This rule is in entire harmony with that laid down in the-Whiting Case, lately decided by this appellate division. The tax was there imposed upon corporate bonds which were not, as in'the Railroad Bond Case (15 Wall. 300), in the actual possession of the decedent at his foreign domicile, but were, in fact, on deposit in a safe-deposit company in this city. These bonds were essentially property. They were not, like shares of stock, mere evidences of an interest in the corporation. They were saleable and repleviable as ordinary chattels They required no written transfer to pass the title thereto. The fiction of the legal situs might, well give way with respect to coupon bonds, thus passing from band to hand by delivery, the same as chattels generally. If such bonds are brought here for permanent safe-keeping, they, are not. only within the jurisdiction of the state in a technical sense, but are within the principle upon which all taxation rests, namely, the-protection of our laws, and the protection of the system inaugurated by those laws and guarded by its ministers. So far as the-securities in that case were bonds of the United States, another-question arose, namely, whether, as to a nonresident decedent, the-tax was to be treated strictly asa tax upon the right of succession. Of course, if it was in any just sense a tax upon property, the-bonds of the United States were specially exempt.
As to residents, the tax has been repeatedly held to be a tax. upon the right of succession under a will, or by devolution, in case of intestacy. In re Swift, 137 N. Y. 88; 50 St. Rep. 81; In re Merriam’s Estate, 141 N. Y. 484; 57 St. Rep. 593. This precise rule has never yet been extended in terms to nonresident decedents, and that question is an open oné, unless, indeed, the general rule which the court of appeals laid down in the Swift and Merriam Oases was intended to cover nonresident as well -as residents decedents. There would certainly seem to be a distinction-, between the two classes. In the case of residents, the right of' succession or devolution is given by the state which imposes the-tax. The state may limit the right as it pleases. Consequently,, it was held, in the Merriam Case, that, assuming that the legacy there in question vested “at the moment of,the testator’s death,, yet, in contemplation of law, the tax was fixed on the succession at the same moment of time.” Can this be said where the estate- or legacy vests under the laws of a foreign state? Does not the-person in whom the estate vests, and who comes to this state to-secure possession of property of the decedent situated here, so - come possessed of the legal title to such property? The right of! succession is not conferred upon him by the laws of this state, bnt by_the laws of the state where the decedent resided and died. It. *787 would seem, therefore, that, as against such a person, the tax, however it may be obscured or styled, is essentially a tax upon property within our jurisdiction, and not upon the right of succession thereto. If it is upon the right of succession, then, plainly, it is a tax upon a right granted by a foreign state. If it is not a tax upon such right, then it is'simply a tax upon property acquired through the instrumentality of a foreign succession law; and that, in substance, is what it is. In common parlance, it is a succession tax; but, in legal parlance, it is, as was intimated in Re James, 144 N. Y. 10; 62 St. Rep. 855, “a tax upon property in this state passing from nonresident decedents.” The latter case distinctly holds'that “it is the property of the decedent which is sought to be subjected to the tax,” and that “the right of the state to impose the tax is based upon its dominion over what property is situated within its territory.” But, whether the court was right or wrong in the Whiting Case, with regard to the bonds of the United States, there can be no doubt that it acted upon the principle that the property was tangible. There is nothing,' therefore, in that case which militates against our present conclusion; nothing in the majority opinion suggestive of the view that debts or dioses in action, apart from the negotiable evidences thereof, may be included in the area of property of a nonresident over which the state has jurisdiction ; nothing, certainly, in the minority opinion.
These considerations may not seem to be in entire harmony with some of the positions taken in the Romaine Case, 127 N. Y. 88, 89; 38 St. Rep. 76. The facts there, however, differed somewhat from the facts of the present case. It appeared that Mr. Bomaine was, at the time of his death, and had been for three years prior thereto, the lessee of a box in a safe-deposit company in this city, in which he kept certain securities, consisting of stocks and bonds of different corporations, and a mortgage upon real estate here, as well as several pass books showing deposits by him in various savings banks. The relation of bailor and bailee thus existed between him and the safe-deposit company. It was said that the property contained in the safe-deposit box was property protected by our laws. And so it was. So far as the coupon bonds were concerned, the case is in harmony with the later authorities. As to the stocks, however, the correctness of the decision under the James Case depends upon a consideration as to which the record was silent, namely, whether the stocks were of domestic or of foreign corporations. As to the deposits in the savings banks, there is a distinction between the Romaine Case and the present, in that there the pass books were permanently guarded in the safe-deposit box in this city. This distinction, we confess, seems to be shadowy, and we prefer to rest our judgment upon what we conceive to be the correct principle, supported, as we are, in that view, by the doctrine of the later cases in the court of appeals, as well as by the deliberate judgment of the supreme court of the United States in the Railroad Bond Case.
The conclusion at which we have arrived is amply supported, not only by what was said in the James Case, and also by the ih' lustrative reasoning in the Phipps Case, 77 Hun, 325; 59 St. Rep. *788 769, which latter case was affirmed (143 N. Y. 641; 60 St. Rep. 874) upon the opinion of Yan Brunt, P. J. In thus substantially adopting the views of the presiding justice in that case, and in subsequently asserting similar views in the James Case, the court of appeals has undoubtedly limited the Romaine Case to the strictest application of its special facts, and has emphasized the general principle which was enforced in the Railroad Bond Case. Speaking, in the James Case, of a similar act to that now under consideration, Gray, J., said :
“ We do not think it was the intendment of the act of 1887 to reach, for purposes of taxation, and personal property that was not within the state, either in fact, or because of the domicile here of its owner. The reading of the act does not authorize us to construe it as an effort to tax that over which there was no jurisdiction, and it would be highly improper to impute to the legislature such an intention."
This language is equally applicable to the act of 1892, and we think it is decisive- of the present appeal.
The order appealed from should be reversed, with costs.
YAN BRUNT, P. J., and RUMSEY and INGRAHAM, JJ, concur.; O’BRIEN, J., concurs in result.