(2 App. Div. 590.)

### In re WHITING.

(Supreme Court, Appellate Division, First Department. March 20, 1896.)

1. SUCCESSION TAX—BONDS OF FOREIGN CORPORATION.
    Bonds of a foreign corporation kept with a safe-deposit company in New York, at the time of the death of the nonresident owner, are subject to a succession tax, under Laws 1892, c. 399, § 1, imposing a tax on the transfer of property "when the transfer is by will * * * of property within the state, and the decedent was a nonresident"; and section 22, defining the word "property," as used in the act, as embracing all property "over which this state has any jurisdiction for the purposes of taxation"; and Laws 1892, c. 677, § 4, defining personal property as including "all written instruments themselves as distinguished from the rights or interests to which they relate by which * * * any debt or financial obligation is created, acknowledged, evidenced, * * * wholly or in part." Van Brunt, P. J., and Ingraham, J. dissenting.

2. SAME—UNITED STATES BOND.
    A succession tax, under Laws 1892, c. 399, is properly imposed where the property which is transferred by will consists of United States bonds; this not being a tax on the bonds. Van Brunt, P. J., and Ingraham, J., dissenting.

Appeal from order of surrogate, New York county.

Proceeding for taxation, under Laws 1892, c. 399, of the estate of Augustus Whiting, deceased. From an order of the surrogate affirming an order fixing an assessment, the executors appeal. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Geo. L. Rives, for appellants.
Jabish Holmes, Jr., for respondent.

PATTERSON, J. This is an appeal from an order of the surrogate of the city and county of New York affirming an order fixing an assessment upon certain personal property and interests which, under the will of Augustus Whiting, a resident of Rhode Island, passed to his executors in trust for his daughter and her issue. Among the assets of Mr. Whiting's estate were certain corporate bonds which, before and at the time of his death, were kept on deposit in a safe-deposit company in the city of New York. Mr. Whiting was domiciled at Newport, in the state of Rhode Island, and the bonds referred to were issued by corporations foreign to the state of New York. The order from which this appeal is taken sustained an assessment for the purposes of a succession tax; the surrogate holding that, although they were bonds of foreign corporations, they were nevertheless property within this state subject to assessment for this species of taxation.

The learned counsel for the appellants, in an instructive and forcible argument, has properly confined the discussion to the single question of the nature of the securities taxed. Are bonds of foreign corporations, belonging to a nonresident, and which are actually within this state at the time of his death, property within this state, within the meaning of subdivision 2 of section 1, c. 399, of the Laws of 1892? The power to tax all assets of the estate of the nonresident testator

situated in this state that may be rightly described as "property within the state" is fully conceded; and that such assets may, for the purposes of state taxation, have a situs separate from the domicile of the decedent is also undisputed. But the argument is that bonds of a corporation, being merely evidences of an indebtedness of that corporation; they cannot have a situs independent of the domicile of the debtor or creditor, because the indebtedness, and not the evidence of it, is the essential thing owned, and is that which constitutes property, in a legal sense. When considered in connection with the imposition of taxes, and as between a debtor and a nonresident creditor, it has been decided, on very high authority, that the situs of corporate bonds, such as those involved here, is the domicile of the latter, and they cannot be taxed in the state under the laws of which the corporation is organized and exists. Case of State Tax on Foreign Held Bonds, 15 Wall. 300. In that case, it was said by the court that:

"All the property there can be, in the nature of things, in debts of corporations, belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications, but no number of authorities, and no forms of expression, can add anything to its truth, which is recognized upon this simple statement."

From the language of the court, just quoted, there can be no room to doubt what it regarded as the subject of property, viz. the indebtedness of the corporation, and not merely the bonds, the evidence of that indebtedness. There are decisions of the courts of this and of other states which hold or tend to hold the same rule. In Re Will of Enston, 113 N. Y. 174, 21 N. E. 87, Judge Andrews, in writing for the court, argues that the bonds of foreign corporations in the hands of the agent of the decedent in this state are not, in a legal sense, property within this state, and are not, under the general rules or policy of the state, taxable here. It is true that this remark was not made concerning the particular property involved in that case, but was used as an illustration to enforce the decision which was reached concerning the nontaxability of the shares of stock that were the subjects of that particular action. So, in Orcutt's Appeal, 97 Pa. St. 179, it was held, under an act of the legislature of Pennsylvania substantially to the same effect as the inheritance tax law of this state, that bonds of a nonresident of the state of Pennsylvania, left on deposit in a trust company of the city of Philadelphia for safekeeping, were not to be regarded as property in the state of Pennsylvania, because they were simply evidences of indebtedness, and could have no situs different from the domicile of the owner.

It must therefore be admitted that the contention of the learned counsel for the appellants, so far as we have considered it, has the support of authority; but, looking at and giving effect to recent legislation concerning the imposition of an inheritance tax upon property within this state, and decisions of the court of appeals, we are compelled to hold that, as the law now stands, the assessment for the tax upon the bonds in question was lawfully imposed. By chapter 399 of the Laws of 1892, the tax may be levied "when the transfer

is by will or intestate law of property within the state, and the decedent was a nonresident of the state at the time of his death." The word "property," as used in that act, is defined, generally, as all property "over which this state has any jurisdiction for the purposes of taxation." By section 4 of chapter 677 of the Laws of 1892, personal property is defined as including "all written instruments themselves, as distinguished from the rights or interests to which they relate, by which * * * any debt or financial obligation is created, acknowledged, evidenced, * * * wholly or in part." If these statutory provisions and definitions are to be given operation according to their obvious meaning, but one conclusion can be drawn from them, namely, that bonds of corporations that are actually—physically—within the jurisdiction of this state constitute property, in a legal sense, and are, therefore, subject to taxation by the state. The effect of these enactments is to give to securities of the character of those involved here the same qualities of property that are recognized to exist in any other species of tangible personal property. A bond for the payment of money becomes something more than a mere evidence of an intangible indebtedness, and is placed by the statutes in the category of chattels generally.

Moreover, the course and tendency of decision in the courts of this state has been, irrespective of the statute (chapter 677 of the Laws of 1892), to regard corporate bonds as property dissociated from the indebtedness represented by them. Thus, in People v. Smith, 88 N. Y. 576, Earl, J., says:

"It is clear, * * * from an understanding of business men in commercial transactions, as well as of jurists and legislators, that mortgages, bonds, bills, and notes, have, for many purposes, come to be regarded as property, and not as the mere evidences of debts; and they may thus have a situs at the place where they are found, like other visible tangible assets."

And so, in Re Romaine, 127 N. Y. 80, 27 N. E. 759, it was held that securities, consisting of stocks and bonds of different corporations (although it did not appear whether the stocks and bonds were issued by foreign or domestic corporations), owned by a nonresident intestate at the time of his death, but which were habitually kept in the state of New York, were subject to taxation under the collateral inheritance act of the state of New York. In the opinion of the court in that case the authorities are collated and commented upon respecting the taxation of personal property of nonresidents of the state, and it was held that, where such property is habitually kept, even for safety, the statute applied, both in the letter and spirit, and the bonds were held to be proper subjects of taxation.

In view of the statutes referred to, and of the condition of the precedents in this state respecting what constitutes property in securities such as the bonds involved here, we feel constrained to affirm the decree of the surrogate, notwithstanding the cogent reasons which, were the question a new one, might induce a contrary conclusion. We recognize the difficulty existing in the case by reason of the possibility of this property being included in a double inheritance tax, viz. both here and in Rhode Island, and also that

the collateral inheritance tax is a succession tax and one which may be differently imposed in this state and in the state of Rhode Island; but we cannot escape the conclusion that the effect of the legislation of 1892 upon this subject is such as authorized the imposition of the tax complained of in this case. With the policy or propriety of the law we have nothing to do, but are obliged to apply it as we find it enacted.

It has been suggested, but not seriously argued, by counsel for the appellants, that the United States bonds are not to be included in the property of Mr. Whiting in the appraisal made in this matter; and that suggestion is regarded by some of the members of this court as controlling. Bonds or obligations of the United States cannot be taxed by a state, either directly or indirectly. No form or mode of taxation can be resorted to to evade the prohibition. Home Ins. Co. v. New York State, 134 U. S. 594, 10 Sup. Ct. 593. But that principle has no application to this case. The charge is not upon property. It is purely and exclusively something required to be paid out of an estate of a deceased person for the privilege enjoyed of succeeding to it. The precise question was considered in the supreme court of Pennsylvania. In Strode v. Com., 52 Pa. St. 181, the court said:

"The mistake of the counsel for the plaintiff in error consists, we conceive, in treating this as a tax upon government bonds, when it is really a tax upon the estate of a decedent dying without lineal heirs. And it does not help the argument that the bulk of the estate is made up of these [United States] bonds; for that estate passed into the hands of the executor for administration, and is taxed in his hands as an estate. The law takes every decedent's estate into custody, and administers it for the benefit of creditors, legatees, devisees, and heirs, and delivers the residue that remains, after discharging all obligations, to the distributees entitled to receive it. One of the legal obligations to which every estate that is to go to collateral kindred is subject is this * * * duty to the commonwealth. And it is not until this work of administration is performed that the right of succession attaches."

The nature of a succession tax is well described in the extract quoted. The tax in this case is in no proper sense on the United States bonds owned by Mr. Whiting and on deposit here at the time of his death. Nor is it at all material, now, that the succession is such as is prescribed or ordained by the laws of Rhode Island. So much of the estate as consisted of these bonds, and some other personal property passing to the executor, was within this state, and the Romaine Case clearly applied to that other property, as counsel for the appellants concedes; and we must hold that the United States bonds are also within the principle of that case.

We are therefore of the opinion that the order appealed from should be affirmed, with costs.

WILLIAMS and O'BRIEN, JJ., concur.

INGRAHAM, J. (dissenting). The appellants, the executors and trustees of this estate, appeal from an order of the surrogate, which order affirmed an order made confirming an appraisement of the value of the inheritance of Charlotte Whiting under the will of Augustus Whiting, deceased. The testator was a nonresident,

living at Newport, in the state of Rhode Island, and by his will he left all his estate, real and personal, to his executors, the appellants, in trust, to receive the income and apply the same to the education and support of his daughter, Charlotte Whiting, until she arrived at the age of 21, and after 21 to pay all the income of the estate to the said Charlotte during her life, and upon her death to pay the said principal of the trust over to the issue of the said Charlotte, and, in case she should leave no issue, to the testator's next of kin. The beneficiary, Charlotte Whiting, is also a resident of Rhode Island, and, so far as appears, neither the testator nor the beneficiary has ever been a resident of this state. The testator died at Newport, and his will was admitted to probate at Newport, R. I., on August 20, 1894. The appellants appeal from the action of the surrogate by which he assessed, as liable to taxation, bonds of foreign corporations secured by a mortgage upon railroads outside of the state of New York, at the par value of $15,000, and 4 per cent. bonds of the United States of the par value of $46,500.

The question presented affects two kinds of securities: First, bonds of foreign corporations secured by a mortgage upon property outside of the state of New York; and, second, bonds of the United States. It does not appear whether these various bonds were coupon bonds or registered bonds, but I do not think that that is material. The act under which this assessment is made, which was in force at the time of the death of the testator, is chapter 399 of the Laws of 1892.

The first section of the act in question provides that:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, * * * to persons or corporations not exempt by law from taxation on real or personal property in the following cases: * * * (2) When the transfer is by will or intestate law, of property within the state, and the decedent was a nonresident of the state at the time of his death."

And by section 22 of the act it is provided that:

"The words 'estate' and 'property' as used in this act shall be taken to mean the property or interest therein of the testator, * * * passing or transferred to those not herein specifically exempted from the provisions of this act. * * * and shall include all property or interest therein, whether situated within or without this state, over which this state has any jurisdiction for the purpose of taxation."

There has been considerable discussion, and some conflict of judicial opinion, as to whether the tax imposed under the provisions of this act is a tax upon "property," or a tax upon the right of succession; but it now seems to be settled that the tax is imposed on the right of succession under a will, or devolution in case of intestacy. See In re Merriam's Estate, 141 N. Y. 484, 36 N. E. 505. There can be no doubt but that it was the intention of the legislature to include within the property subject to this tax all property that was within this state over which the state had jurisdiction for the purpose of taxation, so that a legatee, devisee, heir, or next of kin would take the property subject to this tax, imposed upon the right to take under a will or a devolution in case of intestacy.

Before the state, however, can subject a person to whom property is thus devised or bequeathed to this tax, it seems to be clear that the state must have acquired, in some way, jurisdiction over the persons who were or who become the owners of the property by the transfer, or over the property itself that passes by the will or by operation of law. Under the 22d section of the act the property, as defined in the act, the right to take which is taxed, is to include property over which the state has jurisdiction for the purpose of taxation. If it appears that the state has no jurisdiction over the specific property, then we must get jurisdiction over this right of succession. Where did this right of succession to this property accrue? In whose favor had it accrued? The testator was a resident of Rhode Island. He died there. His will was admitted to probate there. Upon the granting of letters there to his executors, the title to his property vested in them. And his title is recognized by the laws of this state as giving a right to an executor to maintain an action individually to recover the possession of the property as its legal owner, without a grant of letters by the courts of this state. See Toronto General Trust Co. v. Chicago, B. & Q. R. Co., 123 N. Y. 45, 25 N. E. 198. Thus, the right to succeed to this property became vested upon the probate of the will and the grant of the letters there. · Over that right, if that can be considered property, and taxable, this state had no jurisdiction, for it vested under the laws of a foreign state, entirely uncontrolled or unaffected by any law of this state. Thus, the former owner and the beneficiary under the will were both without this state, and the title passed under the laws of a foreign state. So that the right of succession, or right to take the property, was never within the jurisdiction of this state. I do not think this act should be extended so as to include, by a forced construction, property or interests not fairly within its provisions. And the intention of the court of appeals so to construe it is apparent from the case of In re Seaman's Estate, 147 N. Y. 77, 41 N. E. 401.

There are three subdivisions to section 1 of this act imposing the tax. The first subdivision applies to property of a resident of this state passing by will or intestate laws, and the second applies to the property of a decedent who was a nonresident of the state at the time of his death. The first subdivision, applying the legal principle that the situs of all the personal property of a decedent was at the place of his domicile, taxed all such personal property located in this state or in a foreign state; thus asserting, in a most general way, the right by the state to impose upon one of its citizens a tax upon his property, irrespective of its actual locality. When the statute comes to deal with nonresidents, however, a different problem is presented. The state has no jurisdiction over the residents of other states to compel them to pay a tax upon property which is not, when the tax is imposed, within the jurisdiction of this state. But it says, however, that, when the property of such nonresident is here,—is within the jurisdiction of the state,—such property shall pay a tax to this state. A consist-

ent scheme can be given to this act by confining it to such property as has a tangible, visible existence here, as distinct from the residence or domicile of the owner; so that, in both cases, the tax is upon the right of succession,—in the one case because, the testator being a resident of this state, that right of succession passes to the legatee, devisee, heir at law, or next of kin, under and by virtue of the laws of this state, in consequence of such residence; in the other case, such right of succession is within the jurisdiction of this state because of the fact that the property is so located within this state, and under the control of its laws, that the right to succeed is created by the law of this state, and the title to the property passes under its law. It is this property, the right of succession to which is taxed, over which the courts of this state have jurisdiction for the purpose of taxation, and thus is included within the definition contained in section 22 of the act.

The question as to whether this state had any jurisdiction over these bonds of foreign corporations seems to be answered by the judgment of the supreme court of the United States in the Foreign Bond Case, 15 Wall. 300. In that case a corporation organized under the laws of the state of Pennsylvania issued bonds, secured by a mortgage upon its property, some of which bonds were held by the plaintiff in error, a resident of Ireland, in the kingdom of Great Britain. Under the laws of the state of Pennsylvania, that state assumed to tax the interest payable upon such bonds, and to require the Pennsylvania corporation to deduct from the interest that it paid upon such bonds the amount of the tax. And the supreme court of the United States held that such a tax was invalid. An extract from the opinion seems to be decisive of this question:

"But debts owing by corporations, like debts owing by individuals, are not property of the debtors in any sense. They are obligations of the debtors, and only possess value in the hands of the creditors. With them they are property, and in their hands they may be taxed. To call debts property of the debtors is simply to misuse terms. All the property there can be, in the nature of things, in debts of corporations belongs to the creditors to whom they are payable, and follows their domicile, wherever that may be. Their debts can have no locality separate from the parties to whom they are due. This principle might be stated in many different ways, and supported by citations from numerous adjudications; but no number of authorities and no forms of expression could add anything to its obvious truth, which is recognized upon its simple statement."

And, on page 323, the court say:

"A mortgage being there a mere chose in action, it only confers upon the holder, or the party for whose benefit the mortgage is given, a right to proceed against the property mortgaged, upon a given contingency, to enforce by its sale the payment of his demand. This right has no locality independent of the party in whom it resides. It may, undoubtedly, be taxed by the state when held by a resident therein; but, when held by a nonresident, it is as much beyond the jurisdiction of the state as the person of the owner. It is undoubtedly true that the actual situs of personal property which has a visible and tangible existence, and not the domicile of its owner, will in many cases determine the state in which it may be taxed. The same thing is true of public securities, consisting of state bonds and bonds of municipal bodies and circulating notes of banking institutions. The former, by general usage, have acquired the

character of, and are treated as, property in the place where they are found, though removed from the domicile of the owner. The latter are treated and passed as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no situs independent of the domicile of the owner, and certainly can have none where the instruments, as in the present case, constituting the evidences of debt, are not separated from the possession of the owners."

Applying the principles here established, it seems to me plain that these obligations of a foreign corporation, secured by a mortgage upon its property, are not property over which this state has jurisdiction for the purpose of taxation. The testator was a nonresident, as are the beneficiaries under his will. Over them this state has no jurisdiction; and debts due to them, or rights of action vested in them, are their property, which are subject to taxation in the state or country of their domicile. There is no evidence as to the length of time that either of these obligations remained within this state. It does not appear that they were permanently located here, or that they were not here for some special purpose of a temporary nature. The legislature might as well authorize its officers to break into every safe-deposit company in this state, and seize the securities or obligations held in such safe-deposit companies, and tax them during the lifetime of their owners, regardless of their domicile, as to seize them upon the death of a person to whom such obligations are due, and tax them before they are allowed to be sent to the legal representatives of the testator in the foreign country for distribution according to the laws of such country. In such a case, as in the case at bar, if the claim of the comptroller were to be allowed, as was said by Mr. Justice Field in the case before cited:

"It is only one of many cases where, under the name of taxation, an oppressive exaction is made without constitutional warrant, amounting to little less than an arbitrary seizure of private property. It is, in fact, a forced contribution levied upon property held in other states, where it is subjected, or may be subjected, to taxation upon an estimate of its full value."

That the same right of succession would be subject to taxation in the state of the testator's domicile, if the laws of that state were the same as the act in question, is clear; and we thus would subject this right of succession to double taxation, simply because, for some reason not disclosed, the obligation of the debtor evidencing the debt happened to be within this state at the time of the death of the testator.

The Romaine Case, 127 N. Y. 80, 27 N. E. 759, does not determine this question. That case is distinguished by the court of appeals in Re James, 144 N. Y. 12, 38 N. E. 961, where the court say:

"The property of the nonresident decedent, in that case, which was held to be liable to taxation, was stated to be a mortgage upon real estate in the city of New York, deposits in savings banks in that city, and stocks and bonds of different corporations, but whether domestic or foreign it was not made to appear."

The Romaine Case, therefore, is not an authority for holding that the stock and bonds of foreign corporations are property within this state; and the court in Re James, in discussing whether or not the

certificates of stock of foreign corporations which were in this state at the time of the death of the testator, who was a nonresident, say:

"The appellant, in substance, argues that the provision for a tax on 'property * * * within this state,' which the act of 1887 contains, shows that the legislature intended to include as property, for the purpose of taxation, in the estate of a nonresident decedent, evidences of property, like certificates of stock; but, without discussing the power of the legislature to do any such thing, we think that he is straining construction and importing a sense in the word 'property' which the law has not attached. Both in the Swift Case, 137 N. Y. 77, 32 N. E. 1096, and in the Merriam Case, 141 N. Y. 479, 36 N. E. 505, the testator was a resident of the state, and we held that certain personal chattels without the state in the one case, and the stocks of foreign corporations in the other case, should be included in the appraisement of the estate for the purpose of taxation. The decision in each case, of course, rested upon the theory that the legal situs of the personalty could be regarded as at the owner's domicile."

Thus, reading these four cases together, the rule would seem to be that the situs of stock in foreign corporations owned by a decedent would be regarded as at the owner's domicile, and that the same would apply to bonds of foreign corporations, under the rule as laid down in the Foreign Bond Case, supra; and, the legal situs of such stocks and bonds not being within this state, this state could have no jurisdiction over the property in them for the purpose of taxation. The Romaine Case, thus limited by the James Case, is not opposed to this view.

Section 4 of the statutory construction act, being chapter 677 of the Laws of 1892, is relied upon as in some way changing the meaning of the term "personal property," contained in the act in question. This section provides that the term "personal property" includes things in action and written instruments themselves, as distinguished from the rights or interests to which they relate. This act became a law at the same session of the legislature as chapter 399 of the Laws of 1892, but subsequent to the passage of the last-named act; the statutory construction act having become a law May 18, 1892, and chapter 399, the tax law, having become a law April 30, 1892. This statutory construction act does not, in express terms, apply to statutes passed prior to the time of its passage. Section 1 provides that the act "is applicable to every statute unless its general object or the context of the language construed, or other provisions of law, indicate that a different meaning or application was intended from that required to be given by this chapter." It is a general rule in the construction of statutes that they will not be given retroactive effect unless the language used expressly indicates such an intention. And I do not think that this general language could be held applicable to statutes in force at the date of its passage. It would certainly be a most dangerous principle to modify existing law seriously affecting property rights by the passage of an act which did not specifically change the existing laws, but which assumed to provide definitions for words used, and which did not, by its express terms, have a retroactive effect. This statutory construction act only applies to a statute where its general object, or the context of the language construed, or other provisions of law, did not indicate that a different meaning or application was intended. Now, this act of 1892 (section

22 before cited), which was a law at the time of the passage of this construction act, does give a definite meaning to the words "personal property." The act itself attempts to define what is to be taxed, and it thus shows that the legislature intended to depend upon provisions of the act itself to define what it intended to tax, and not to depend upon any statutory construction law theretofore or thereafter passed. It would come, I think, expressly within the limitation of section 1 of the construction law, which would indicate that a different meaning or application was intended to be given to this word "property," as distinct from that given by the statutory construction law.

But, even assuming that section 4 applied, it still does not affect this question. An analysis of the section will show that it was not the intention of the legislature to say that the rule of law that regarded a debt as property where the creditor resided was to be changed. It simply said that the term "personal property" should include the obligation or written instrument itself, as distinguished from the right or interest to which it relates, so that, when the word "property" was used, it should include both the written instrument and the obligation created by it. And that this was not intended to have, and has not had, the effect of changing the rule theretofore existing, is apparent from the cases which decide that, where a resident of this state dies, his property, wherever actually located, is taxable here. That this statutory construction act did undoubtedly give a specific meaning to the word "property" in statutes that were thereafter passed, by which the word "property," when used, unless a different meaning was clearly intended, so that such word "property" should apply to the instruments evidencing an indebtedness, as well as the debt itself, is clear. But nothing therein would indicate an intention of the legislature to change the well-settled rule of law that the actual property was the indebtedness, and that that vested in the creditor. And when the instrument evidencing the indebtedness was separated from the domicile of the creditor, and the court had to determine which of the two places should be taken as the situs of the property (namely, the indebtedness), the statute does not provide that the settled rule should not apply, as had been the law prior to this time; that is, that the situs of such indebtedness should be at the residence of the debtor, rather than at the location of the instrument evidencing the indebtedness.

Considering the debt or demand due to the creditor as property, it is clear that the obligation to pay a debt cannot be separated from the debt itself, so as to make two separate and distinct pieces of property,—one a debt, and the other the obligation to pay the debt. The debt, and the writing creating or evidencing the obligation to pay the debt, together constitute the specific property, which vests in the creditor, and which is the right to receive from the debtor the amount due. And the question is, where is that right to receive the amount due actually situated? There is nothing in this act, under which this tax is imposed, to show that the legislature intended to give a different situs to property in subdivision 1 than it did to property in subdivision 2. Subdivision 1 has been

expressly construed to include all personal property, wherever situated, which vested in a resident of this state, on the ground that the legal situs of such property is at the residence of its owner. Nothing that is contained in the act justifies us in assuming that it was intended, by section 2 of the act, to change that rule, and to say that the situs of personal property of nonresidents was elsewhere than was the situs of the personal property of residents, as applied to such a piece of property as a debt or demand due to an individual. On the contrary, the construction given by the court of appeals to this section in the case of In re James, supra, clearly indicates that such an intention was not to be assumed from the language of the act in question.

The next question is as to the right of the state to tax the United States bonds, or to tax the transfer of the United States bonds. In determining this question it should be noticed that the act in question is entitled "An act in relation to taxable transfers of property"; and section 1 of the act provides: "A tax shall be and is hereby imposed upon the transfer of any property, real and personal," etc. Has this state a right to tax the transfer of, or right of succession to, bonds issued by the United States? This question, I think, is clearly settled by one or two decisions of the supreme court of the United States. In the case of Weston v. City Council, 2 Pet. 460, an ordinance of the city council of Charleston was passed imposing a tax of 25 cents upon every $1,000 of all personal estate consisting of 6 and 7 per cent. stock of the United States; and the supreme court of the United States, Marshall, C. J., delivering the opinion, held that the act was unconstitutional. The court thus states the question: ·

"Is the stock issued for loans made by the government of the United States liable to be taxed by states and corporations?"

And, in holding that the ordinance was in conflict with the constitution, he said:

"The American people have conferred the power of borrowing money on their government, and, by making that government supreme, have shielded its action in the exercise of this power from the action of the local governments. The grant of the power is incompatible with a restraining, or controlling power, and the declaration of supremacy is a declaration that no such restraining or controlling power shall be exercised. The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burden on the operations of governments. It may be carried to an extent which shall arrest them entirely. * * * The tax on government stock is thought by this court to be a tax on the contract, a tax on the power to borrow money on the credit of the United States, and, consequently, to be repugnant to the constitution."

In the case of People v. Commissioners of Taxes, 2 Black, 628, it was held that this principle applied to an act taxing the capital of a bank organized under the laws of the state of New York where a portion of the capital of the bank was invested in United States stock; and the difference was noted between the ordinance of the city of Charleston and the law of New York, which "consists in the

circumstance that the tax in the former case was imposed on the stock, eo nomine, whereas, in the present case, it is taxed on the aggregate of the taxpayer's property, and to be valued at its real worth in the same manner as all other items of his taxable property." It was still held that it was a tax upon the power of the United States to borrow money, and was repugnant to the constitution. And in the Bank Tax Case, 2 Wall. 206, this principle was applied to an act by which a tax was imposed on a valuation equal to the amount of the capital paid in or secured to be paid in by a state bank, and it was held that, where a portion of the capital of the bank was invested in the stock of the United States, it was a tax upon the property of such bank. The court then said:

"Having come to the conclusion that the tax on the capital of the Bank of the Commonwealth is a tax on the property of the institution, and which consists of the stock of the United States, we do not see how the case can be distinguished from that of People v. Commissioners of Taxes, 2 Black, 620. That the bonds or obligations of the United States cannot be subject to taxation by a state is settled law. It is a tax upon the exercise of the power of congress to borrow money. Nor can this inhibition upon the states be evaded by any change in the mode or form of taxation provided the same result is effected; that is, an impediment is thereby interposed to the exercise of a power of the United States. That which cannot be accomplished directly cannot be accomplished indirectly. Through all such attempts the court will look to the end sought to be reached; and, if that would trench upon a power of the government, the law creating it will be set aside, or its enforcement restrained."

Home Ins. Co. v. New York State, 134 U. S. 598, 10 Sup. Ct. 593.

In these cases the one principle was applied that any tax, direct or indirect, upon stock of the United States, or upon money or property invested in the stock of the United States, was repugnant to the constitution of the United States, as being a tax upon the power granted to the government of the United States to borrow money; and thus such bonds or stocks were property over which the state had no jurisdiction for the purpose of taxation. This statute in express terms imposes a tax upon the transfer of the property, and it seems too clear for argument that a tax upon a transfer of property, or a right to receive or own property, is a tax upon the property, within the principle thus settled. So far as it affects the power of the United States, it is just as much an interference with that power to tax the transfer of the stock as to tax the stock itself; and it clearly follows, I think, that over this stock of the United States this state had no jurisdiction for the purpose of taxation.

The order of the surrogate should therefore be reversed, and the proceedings remitted, with instructions to strike out the bonds and stock mentioned in the notice of appeal of the executors from the property subject to taxation, with costs and disbursements in favor of the appellants.

VAN BRUNT, P. J., concurs.