VAN BRUNT, P. J., WILLIAMS, PATTERSON and INGRAHAM, JJ., concurred.

Judgment reversed and new trial ordered, costs to appellant to abide event.

---

In the Matter of the Appraisal of the Property of JOHN F. HOUDAYER, Deceased, under the Act in Relation to Taxable Transfers of Property.

JOHN H. SCUDDER, as Administrator, etc., of JOHN F. HOUDAYER, Deceased, Appellant; ASHBEL P. FITCH, Comptroller of the City of New York, Respondent.

*Transfer tax — an individual deposit of a non-resident, in his name as trustee, in a loan and trust company is not taxable — nor is the right to an accounting — limit of jurisdiction to tax — situs of a debt — when the tax is upon the property, and not one upon the succession.*

Money of a non-resident of this State, belonging to him individually, and deposited by him in an account which he kept as trustee with a loan and trust company doing business in the State of New York, is not property of the decedent within the State of New York within the meaning of the Taxable Transfer Act (1892, chap. 399, § 1, subd. 2).

In such a situation, all that the decedent has individually within this State is a right to an accounting in equity, between himself and his debtor, the loan and trust company, in order to separate the individual from the trust deposit and to appropriate the general balance in bank in accordance with justice.

Neither the debt nor the right to an accounting is property within this State.

The power of the State to tax is limited to persons, property and business within its jurisdiction.

The situs of a debt is the domicile of the creditor, and the legal situs of a chose in action is, to all intents and purposes, its actual situs.

The State cannot create a liability in its own favor against a non-resident creditor by the mere exercise of jurisdiction over his resident debtor.

In the case of a non-resident, the transfer tax is not a tax upon the right of succession, but is simply a tax upon property acquired through the instrumentality of a foreign law relative to the succession.

APPEAL by John H. Scudder, as administrator, etc., of John F. Houdayer, deceased, from an order of the Surrogate's Court of the county of New York, entered in said court on the 21st day of January, 1896, affirming an order of said court entered therein on the 17th day of January, 1896, which fixed the transfer tax due upon the interests of the beneficiaries in the estate of said decedent.

*J. Culbert Palmer*, for the appellant.

*Emmet R. Olcott*, for the respondent.

BARRETT, J.:

The question here is, whether the balance due the decedent at the time of his death, resulting from deposits made by him individually in a trust account which, as trustee under the will of Edmund Husson, deceased, he had opened in the Farmers' Loan and Trust Company of this city, was "property" of the decedent "within this State," within the meaning of the Taxable Transfers Act (Laws of 1892, chap. 399, § 1, subd. 2). It is well settled that the legal relation which existed between the decedent, as such trustee, and the Farmers' Loan and Trust Company, was that of debtor and creditor. The deposits became the property of the trust company, and thereupon the company became indebted to the depositor for the amount so deposited. Here, however, even this relation existed only between the decedent in his representative capacity (as trustee under the will of Edmund Husson) and the company. Individually he occupied no contract relation toward the company. His individual deposits simply went to swell the trust account. Ordinarily it would have required an accounting in equity to separate the individual from the trust deposits, and to appropriate the general bank balance in accordance with just principles. Here this separation was amicably

arranged between the decedent's estate and the trust estate, but this was merely a friendly substitute for an accounting. Precisely what the decedent had individually within this State was the right to an accounting in equity with regard to a debt due by the company to himself as Husson's trustee. We do not think that the debt was property within this State within the meaning of the Taxable Transfers Act. Much less was the right to an accounting with respect to such debt. It is provided by section 22 of the act in question, that the word property, as used therein, shall " include all property or interest therein, whether situated within or without this State, over which this State has any jurisdiction for the purposes of taxation." No more and no less. Not property generally it will be observed. Not even " property " as defined by the Statutory Construction Act passed later in the session of 1892 (Chap. 677), for much of what is within its definitions is " property " over which the State cannot, as against non-residents, have any jurisdiction. Thus the act is in harmony with the authorities which hold that the power of taxation of a State is limited to persons, property and business within her jurisdiction. (*Foreign-held Bond Case*, 15 Wall. 300.) This jurisdiction, however, is not what the State may choose to assert, but what, as matter of fact, it possesses. Here, for instance, this State has no jurisdiction over the person of the decedent. He was, in fact, a non-resident of this State. It does not appear that he transacted business within this State, so the jurisdiction upon that head was also lacking. The question remains as to his property. It was distinctly held in the *Foreign-held Bond Case* (*supra*) that debts have no situs independent of the domicile of the creditor, and that such debts are the property of the creditor and follow his domicile. It is of no moment in the application of this rule, where the debtor resides or does business, or where he may be found. A debt can have no locality separate from the party to whom it is due. The debt there was evidenced by the bonds of a domestic corporation, but as such bonds were not within the taxing State, as in fact they were in the actual possession of the owner at his foreign domicile, the Supreme Court of the United States held that the property evidenced thereby was not within the taxing State and was not taxable there.

Thus clearly this State had no jurisdiction, for the purpose of

taxation, over the right in action here possessed by the decedent. It asserted no such jurisdiction in the act in question, nor could it have done so. Its jurisdiction, so far as non-resident decedents were concerned, was limited to property which had a visible and tangible existence. As to visible and tangible property, the fiction of a legal situs at the domicile of the owner gives way to the fact of the actual situs. With regard to choses in action, however, and intangible property generally, the legal situs is, to all intents and purposes, the actual situs. (*People ex rel. Hoyt* v. *Commissioners*, 23 N. Y. 224.) The debtor is not the debt, and jurisdiction over the debtor is not, for the purposes of taxation, jurisdiction over his obligation. There is jurisdiction to attach, but not to tax, the debt. The right to attach proceeds upon the jurisdiction over the resident debtor. There is jurisdiction to compel such debtor to pay what he owes his creditor to the latter's creditor. In that case the attachment does not create the obligation. It enforces it. The tax, however, creates the liability and also enforces it. That can only be done when the person or the property of the creditor is within the jurisdiction. The State cannot create a liability in its own favor against the non-resident creditor by the mere exercise of jurisdiction over the resident debtor. It can enforce an existing liability, but it cannot create one.

This rule is in entire harmony with that laid down in the *Whiting* case, lately decided by this Appellate Division (2 App. Div. 590). The tax was there imposed upon corporate bonds which were not, as in the *Foreign-held Bond* case, in the actual possession of the owner at his foreign domicile, but were in fact on deposit in a safe deposit company in this city. These bonds were essentially property. They were not like shares of stock, mere evidences of an interest in the corporation. They were salable and repleviable as ordinary chattels. They required no written transfer to pass the title thereto.

The fiction of the legal situs might well give way with respect to coupon bonds, thus passing from hand to hand by delivery the same as chattels generally. If such bonds are brought here for permanent safe-keeping, they are not only within the jurisdiction of the State in a technical sense, but are within the principle upon which all taxation rests, namely, the protection of our laws, and the pro-

tection of the system inaugurated by those laws and guarded by its ministers. So far as the securities in that case were bonds of the United States, another question arose, namely, whether, as to a non-resident decedent, the tax was to be treated strictly as a tax upon the right of succession. Of course, if it was in any just sense a tax upon property, the bonds of the United States were specially exempt.

As to residents, the tax has been repeatedly held to be a tax upon the right of succession under a will, or by devolution, in case of intestacy. (*Matter of Swift*, 137 N. Y. 77; *Matter of Merriam*, 141 id. 484.) This precise rule has never yet been extended in terms to non-resident decedents, and that question is an open one, unless indeed, the general rule which the Court of Appeals laid down in the *Swift* and *Merriam* cases was intended to cover non-resident as well as resident decedents. There would certainly seem to be a distinction between the two classes. In the case of residents, the right of succession or devolution is given by the State which imposes the tax. That State may limit the right as it pleases. Consequently it was held in the *Merriam* case, that, assuming that the legacy there in question vested " at the moment of testator's death, yet in contemplation of law the tax was fixed on the succession at the same instant of time." Can this be said where the estate or legacy vests under the laws of a foreign State? Does not the person in whom the estate vests and who comes to this State to secure possession of property of the decedent situated here, so come possessed of the legal title to such property? The right of succession is not conferred upon him by the laws of this State, but by the laws of the State where the decedent resided and died. It would seem, therefore, that as against such a person the tax, however it may be obscured or styled, is essentially a tax upon property within our jurisdiction, and not upon the right of succession thereto. If it is upon the right of succession, then plainly it is a tax upon a right granted by a foreign State. If it is not a tax upon such right, then it is simply a tax upon property acquired through the instrumentality of a foreign succession law. And that in substance is what it is. In common parlance it is a succession tax. But in legal parlance it is, as was intimated in the *Matter of James* (144 N. Y. 10), " a tax upon property in this State passing from non-

resident decedents." The latter case distinctly holds that " it is the property of the decedent which is sought to be subjected to the tax ; " and that " the right of the State to impose the tax is based upon its dominion over what property is situated within its territory." But whether the court was right or wrong in the *Whiting* case, with regard to the bonds of the United States, there can be no doubt that it acted upon the principle that the property was tangible. There is nothing, therefore, in that case which militates against our present conclusion ; nothing in the majority opinion suggestive of the view that debts or choses in actions, apart from the negotiable evidences thereof, may be included in the area of property of a non-resident over which the State has jurisdiction ; nothing certainly in the minority opinion.

These considerations may not seem to be in entire harmony with some of the positions taken in the *Romaine Case* (127 N. Y. 88, 89). The facts there, however, differed somewhat from the facts of the present case. It appeared that Mr. Romaine was, at the time of his death, and had been for three years prior thereto, the lessee of a box in a safe deposit company in this city, in which he kept certain securities consisting of stocks and bonds of different corporations, and a mortgage upon real estate here, as well as several pass books showing deposits by him in various savings banks. The relation of bailor and bailee thus existed between him and the safe deposit company. It was said that the property contained in the safe deposit box was property protected by our laws. And so it was. So far as the coupon bonds were concerned, the case is in harmony with the later authorities. As to the stocks, however, the correctness of the decision under the *James* case depends upon a consideration as to which the record was silent, namely, whether the stocks were of domestic or of foreign corporations. As to the deposits in the savings banks, there is a distinction between the *Romaine* case and the present, in that there the pass books were permanently guarded in the safe deposit box in this city. This distinction we confess seems to be shadowy, and we prefer to rest our judgment upon what we conceive to be the correct principle, supported as we are in that view by the doctrine of the later cases in the Court of Appeals, as well as by the deliberate judgment of the Supreme Court of the United States in the *Foreign-held Bond* case.

The conclusion at which we have arrived is amply supported, not only by what was said in the *James* case, but also by the illustra- tive reasoning in the *Phipps Case* (77 Hun, 325), which latter case was affirmed (143 N. Y. 641) upon the opinion of Van Brunt, P. J. In thus substantially adopting the views of the presiding justice in that case and in subsequently asserting similar views in the *James* case, the Court of Appeals has undoubtedly limited the *Romaine* case to the strictest application of its special facts, and has empha- sized the general principle which was enforced in the *Foreign-held Bond* case. Speaking in the *James* case of a similar act to that now under consideration, Gray, J., said : " We do not think it was the intendment of the act of 1887 to reach for purposes of taxation any personal property that was not within the State either in fact or because of the domicile here of its owner. The reading of the act does not authorize us to construe it as an effort to tax that over which there was no jurisdiction, and it would be highly improper to impute to the Legislature such an intention."

This language is equally applicable to the act of 1892, and we think it is decisive of the present appeal.

The order appealed from should be reversed, with costs.

Van Brunt, P. J., Rumsey and Ingraham, JJ., concurred ; O'Brien, J., concurred in result.

Order reversed, with costs.