## Staunton.

## Nuckolls and Phipps, Executors of Cornett,
## v.
## Commonwealth.

### September 16, 1920.

1. Succession Taxes—*Fund Derived from Sale of National Bank Stock in Another State—Double Taxation—Case at Bar.*—A decedent domiciled in Virginia made a will disposing of his estate by pecuniary legacies to his sister, nephews and nieces.

   *Held:* That a fund held by his Virginia executors, constituting the proceeds of the sale of 200 shares of stock of a national bank located in Missouri, made by the Missouri administrators of the decedent, and, under the laws of that State, there subjected to a collateral inheritance tax, was also subject in this State to an inheritance tax under the Virginia Statute.

2. Succession Taxes—*Intangible Personal Property—Situs for Taxation.*—The intangible personal property, stocks, bonds and other evidences of debt, are subject to an inheritance tax by the State in which its owner was domiciled at the time of his death, and this without reference to the actual location of the evidences of such ownership. This, because personal property of this character follows the person of the owner, and his domicile fixes its situs for taxation.

3. Succession Taxes—*Nature of the Tax—Not a Tax Upon the Property Itself.*—An inheritance tax is not a tax upon the property itself, but is an impost or excise, which is imposed as a condition precedent to the transmission or transfer of property from the dead to the living. The right to succeed to the property of a decedent is a creature of the law, only secured and protected by its authority, which right the legislature may, in its discretion, restrict, for it depends upon the statute of wills and the statute of descents and distributions. It is a tax upon a civil right or privilege which is granted by the State upon such terms as may be imposed.

4. Succession Taxes—*Estate within the Commonwealth—Subsection a, Section 44, Tax Bill 1910, Acts 1910, p. 229.*—If the owner of the property is domiciled in the State of Virginia, then his intangible personal property is, for the purpose of

taxation, located in this State. Upon his death, it must be distributed in accordance with the law of his domicile, it is estate within the Commonwealth, and therefore, within its jurisdiction. "Estate in the Commonwealth," as used in sub-section a, section 44, Tax Bill 1910, Acts 1910, p. 229, includes the proceeds of the sale of shares of stock of a national bank in another State, which constituted part of the estate of the decedent, which estate at his death had a legal situs in this State.

5. EXEMPTIONS FROM TAXATION—*Construction of Exemptions.*— Exemptions from taxation are not favored, and the burden is upon one who is included within the general language and claims exemption to show some exclusive language creating such exemption.

6. TAXATION—*Double Taxation—Validity.*—That double taxation is vexatious, burdensome and contrary to the common sense of justice is true, but this does not determine the question of its validity. There are many instances of valid double taxation, and there are many precedents sustaining such taxation under statutes imposing collateral inheritance taxes.

7. SUCCESSION TAXES—*Double Taxation—Succession Taxes on Stock in the State where the Corporation is Situated and in the State where the Owner was Domiciled.*—Where the State in which a national bank was situated imposed a tax upon the proceeds of shares of a decedent domiciled in another State, and the State in which the decedent was domiciled imposed a tax upon the same, the two taxes are based upon different theories. The State in which the owner is domiciled has the right to fix the conditions and limitations of succession. On the other hand, the State within which the property is actually located has the right to impose the condition upon which such property may be transferred. The fact that two States, each dealing with its own law of succession, have taxed the rights which they respectively confer, gives no ground for complaint on constitutional grounds.

8. SUCCESSION TAXES—*Proceeds of Sale of Bank Stock.*—Under the order of a Missouri court bank stock of a decedent, who had been domiciled in Virginia, was sold in Missouri, paid for in cash, and the fund received in cash by the Missouri administrators of the decedent forwarded to the Virginia executors of the decedent for distribution to the legatees to whom pecuniary legacies and not bank stock had been bequeathed. *Held:* That this State had the right to impose an inheritance tax upon such a fund and had exercised it. Such a tax is not an inheritance tax on the transfer of shares of a national bank located in Missouri.

81

Error to a judgment of the Circuit Court of Grayson county on a motion to correct an erroneous assessment. Judgment for the Commonwealth. Plaintiff assigns error.

*Affirmed.*

The opinion states the case.

*W. B. Kegley* and *J. H. Rhudy,* for the plaintiffs in error.

*Jno. R. Saunders, Attorney-General,* and *J. D. Hank, Jr., Assistant Attorney-General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

[1] The question raised by this record is whether a fund held by the Virginia executors of M. W. Cornett, constituting the proceeds of sale of 200 shares of stock of a national bank located in Missouri, made by the Missouri administrators, and, under the laws of that State, there subjected to a collateral inheritance tax, is also subject in this State to an inheritance tax under the Virginia statute.

The decedent was domiciled in Grayson county, Virginia, and made a will disposing of his estate by pecuniary legacies to his sister, nephews and nieces. The collateral inheritance tax having been imposed under the laws of Missouri, it is claimed that the imposition of the tax here complained of under the Virginia law is erroneous for two reasons—first, because under a proper construction of subsection (a) of section 44 of the tax bill (Acts 1902-3-4, c. 148), the fund is not thereby made subject to a collateral inheritance tax, upon the ground that it is not estate in this Commonwealth; and, second, because it is in the nature of a double tax on the transfer of the same property.

The nature of the inheritance tax and the conditions under which such a tax may be imposed have been so fre-

quently and elaborately stated by the courts that it is unnecessary to do more in this case than to repeat a few generally accepted propositions.

[2] The intangible personal property, stocks, bonds and other evidences of debt, are subject to an inheritance tax by the State in which its owner was domiciled at the time of his death, and this without reference to the actual location of the evidences of such ownership. This because personal property of this character follows the person of the owner, and his domicile fixes its situs for taxation. *Commonwealth* v. *Williams*, 102 Va. 778, 47 S. E. 867, 1 Ann. Cas. 434; *Pendleton* v. *Commonwealth*, 110 Va. 229, 65 S. E. 536; *Cooper* v. *Commonwealth*, 121 Va. 338, 93 S. E. 680; *Wise* v. *Commonwealth*, 122 Va. 693, 95 S. E. 632; *Taylor* v. *Commonwealth*, 124 Va. 445, 98 S. E. 5; *Bullen* v. *Wisconsin*, 240 U. S. 625, 36 Sup. Ct. 473, 60 L. Ed. 830; *In re Hodges*, 170 Cal. 492, 150 Pac. 344, L. R. A. 1916A, 837; *People* v. *Union Trust Co.*, 255 Ill. 168, 99 N. E. 377, Ann. Cas. 1913D, 514, note; L. R. A. 1915D. 450; *Frothingham* v. *Shaw*, 175 Mass. 59, 55 N. E. 623, 78 Am. St. Rep. 475, and note; *State* v. *Ramsey County Probate Ct.*, 124 Minn. 508, 145 N. W. 390, Ann. Cas. 1915B, 861, 50 L. R. A. (N. S.) 262; *In re Swift*, 137 N. Y. 77, 32 N. E. 1096, 18 L. R. A. 709; *In re Bullen*, 143 Wis. 512, 128 N. W. 109, 139 Am. St. Rep. 1114, notes, 41 Am. St. Rep. 583, 127 Am. St. Rep. 1092, 46 L. R. A. (N. S.) 1179.

[3] Such a tax is not a tax upon the property itself, but is an impost or excise, which is imposed as a condition precedent to the transmission or transfer of property from the dead to the living. The right to succeed to the property of a decedent is a creature of the law, only secured and protected by its authority, which right the legislature may, in its discretion, restrict, for it depends upon the statute of wills and the statute of descents and distributions. It is a tax upon a civil right or privilege which is granted

by the State upon such terms as may be imposed. *Eyre* v. *Jacob*, 14 Gratt. (55 Va.) 422, 73 Am. Dec. 367; *Peters* v. *Lynchburg*, 76 Va. 931; *Magoun* v. *Illinois, etc., Co.*, 170 U. S. 283, 18 Sup. Ct. 594, 42 L. Ed. 1037; *Commonwealth* v. *Carter*, 126 Va. 469, 102 S. E. 58; *Eidman* v. *Martinez*, 184 U. S. 578, 22 Sup. Ct. 515, 46 L. Ed. 697; *Knowlton* v. *Moore*, 178 U. S. 41, 20 Sup. Ct. 747, 44 L. Ed. 969.

So clear is it that an inheritance tax is not a tax upon the property transferred, that it is held that unless the State statutes are so drawn as to exempt such property, the transfer of United States bonds or securities by will or succession is subject to inheritance taxes. The reason is stated to be because there is no doubt that the legislature of a State is competent to impose such a tax since the charge is not on the bonds or securities themselves, but rather upon the transfer thereof, or the privilege of receiving them, by will or descent. The fact that the property itself is exempt from taxation is, therefore, immaterial. *Plummer* v. *Coler*, 178 U. S. 115, 20 Sup. Ct. 829, 44 L. Ed. 998. Such a tax does not impair the obligation of the contract or the borrowing power of the United States government. *Estate of Sherman*, 153 N. Y. 1, 46 N. E. 1032; *Estate of Whiting*, 2 App. Div. 590, 38 N. Y. Supp. 131; *Estate of Carver*, 4 Misc. Rep. 592, 25 N. Y. Supp. 991; *Matter of Howard*, 5 Dem. Sur. (N. Y.) 483; *Strode* v. *Commonwealth*, 52 Pa. 181; *Wallace* v. *Myers* (C. C.) 38 Fed. 184, 4 L. R. A. 171; *Orr* v. *Gilman*, 183 U. S. 278, 22 Sup. Ct. 213, 46 L. Ed. 196; 26 R. C. L. 202.

It is also held that under the Federal war revenue act of 1898 (30 Stat. 448), United States bonds are not exempt from inheritance tax. It is provided that such bonds are exempt from taxation, but, as it has been stated, the tax is not upon the bonds, but upon the transmission thereof. *Murdock* v. *Ward*, 178 U. S. 139, 20 Sup. Ct. 775, 44 L. Ed. 1009.

Nor does the fact that the property of the beneficiary is

immune from State taxation affect the question, for it is held that a legacy to the United States is subject to the New York State inheritance tax. *United States* v. *Perkins,* 163 U. S. 630, 16 Sup. Ct. 1075, 41 L. Ed. 289, affirming *In re Merriam's Estate,* 141 N. Y. 479, 36 N. E. 505. In that case the Supreme Court of the United States said this: "The act in question is not open to the objection that it is an attempt to tax the property of the United States, since the tax is imposed upon the legacy before it reaches the hands of the government. The legacy becomes the property of the United States only after it has suffered a diminution to the amount of the tax, and it is only upon this condition that the legislature assents to a bequest of it. * * * What the corporations are to which the exemption was intended to apply are indicated by the tax laws of New York, and are confined to those of a religious, educational, charitable, or reformatory purpose. We think it was not intended to apply it to a purely political or governmental corporation like the United States." Note 127 Am. St. Rep. 1015.

[4, 5] (a) It is claimed that as the Virginia statute under consideration (subsection a, section 44, as amended by section 1, Tax Bill 1910, Acts, p. 229) under which these taxes were imposed, uses different language from the statutes of other States which have been construed, these cases have little application; that as the bank was in Missouri, therefore the property here involved was neither in Virginia nor subject to its jurisdiction, and hence was not intended by the Virginia statute to be subjected to the collateral inheritance tax.

The pertinent words of the Virginia statute are, "estate within the Commonwealth," while the language construed in some of the other statutes is, "personalty in the territorial limits of the Commonwealth," and "property within the jurisdiction of the State." Bearing in mind that the general purpose of the Virginia statute is to impose inheri-

tance taxes, it seems to us that this difference in verbiage does not signify any different intendment, or change the true intent, purpose or meaning of the statute, as indicated by its language, because it is so well settled that if the owner of the property is domiciled in the State of Virginia, then his intangible personal property is, for the purpose of taxation, located in this State. Upon his death it must be distributed in accordance with the law of his domicile, is estate within the Commonwealth, and therefore within its jurisdiction. The Virginia statute does relieve part of a decedent's estate from inheritance taxes—that is, property which is devised or bequeathed "exclusively for State, county, municipal, benevolent, charitable, educational, or religious purposes," and if the legislature had intended to make further exemptions of the estates of its deceased domiciled residents from inheritance taxes, surely some language indicative of such a purpose would have been used. We are of opinion that a fair consideration of the language used and the general purposes of the statute inevitably leads to the conclusion that the words, "estate in the Commonwealth," in this statute, includes the proceeds of the sale of the shares of national bank stock referred to, which constituted part of the estate of the decedent, which estate at his death had a legal situs in this State. Exemptions from taxation are not favored, and the burden is upon one who is included within the general language and claims exemption to show some exclusive language creating such exemption. 26 R. C. L., section 206, p. 233; Ann. Cas. 1915C, 324. In this statute there is no specific language involved except the words "estate in the Commonwealth," and these words do not import any purpose to exclude such property as is here involved.

[6] (b) It is also claimed that because the fund has been assessed with a collateral inheritance tax in Missouri, that therefore this tax is invalid. That double taxation is

vexatious, burdensome and contrary to the common sense of justice is true, but this does not determine the question of its validity. There are many instances of valid double taxation, and there are many precedents sustaining such taxation under statutes imposing collateral inheritance taxes. *Hawley* v. *Malden,* 232 U. S. 1, 34 Sup. Ct. 201, 58 L. Ed. 477, Ann. Cas. 1916C, 842; *Fidelity & C. Trust Co.* v. *Louisville,* 245 U. S. 54, 38 Sup. Ct. 40, 62 L. Ed. 145, 15 L. R. A. (N. S.) 150, L. R. A. 1918C, 124; *Cream of Wheat Co.* v. *County of Grand Forks,* 253 U. S. 325, 40 Sup. Ct. 558, 64 L. Ed.

In *Mann* v. *Carter,* 74 N. H. 352, 68 Atl. 134, this is said: "Whether the burden imposed by the inheritance law is properly called a tax, it is unnecessary to inquire; for if it is, the legislature has not attempted to impose more than a single tax on the property of a decedent passing collaterally under our laws. If some other State makes a claim to the property under its tax laws and for the support of its institutions, the exercise of such power, whether rightful or wrongful, does not make the exercise of similar power by this State, for the support of its institutions, illegal on the ground of double taxation. The two burdens are created by two different and independent States, for wholly different local purposes, and are as distinct and as irrelevant, the one to the other, on the question of double taxation, as were the two taxes assessed upon the plaintiffs' ice in *Winkley* v. *Newton, supra.*

"This result is also in accord with the general trend of the authorities upon the subject. As said in *Hartman's Case,* 70 N. J. Eq., 664, 667: 'The great weight of authority favors the principle adopted by the New York Court of Appeals, holding that the tax imposed is on the right of succession under a will, or by devolution in case of intestacy; and that as to personal property, its situs, for the purpose of a legacy or succession tax, is the domicile of the

decedent, and the right to its imposition is not affected by the statute of a foreign State, which subjects to similar taxation such portion of the personal estate of any non-resident testator or intestate as he may take and leave there for safe-keeping, or until it should suit his convenience to carry it away.' In addition to cases already cited, see *Hopkins' Appeal,* 77 Conn. 644; *Bridgeport Trust Co.'s Appeal,* 77 Conn. 657; *Matter of Swift's Estate,* 137 N. Y. 77; *Matter of Houdayer,* 150 N. Y. 37; *State* v. *Dalrymple,* 70 Md. 294; *Eidman* v. *Martinez,* 184 U. S. 578, 581; *Dos Passos Inher. Tax,* s. 29; Dicey Conf. Laws, 682, *et seq.* But see *In re Joyslin's Estate,* 76 Vt. 88."

[7] The two taxes are based upon different theories. The State in which the owner is domiciled has the right to fix the conditions and limitations of succession. On the other hand, the State within which the property is actually located has the right to impose the condition upon which such property may be transferred; and so it is held in *Blackstone* v. *Miller,* 188 U. S. 189, 23 Sup. Ct. 277, 47 L. Ed. 445, that the fact that two States, each dealing with its own law of succession, have taxed the rights which they respectively confer, gives no ground for complaint on constitutional grounds. Under the authorities it is lawfully taxable in both States. *Gallup's Appeal,* 76 Conn. 617, 57 Atl. 699; *Appeal of Hopkins,* 77 Conn. 644, 60 Atl. 657; Ann Cas. 1918A, 555, note.

*In re Dingman's Estate,* 66 App. Div. 228, 72 N. Y. Supp. 694, in which latter case the inconvenience which would result from any other rule is pointed out in this language: "It cannot be that it was the intention of the legislature to so frame the law that a person, in contemplation of death, may place his entire estate, if it consists of personal property, in a foreign State, where it may be distributed to his heirs or next of kin residing in such State, and thus relieve such property of the payment of the transfer tax imposed by the statute."

In *Blackstone* v. *Miller, supra,* Mr. Justice Holmes expresses the now accepted view, and cites the authorities which sustain it thus: "The answer is somewhat obscured by the superficial fact that New York, like most other States, recognizes the law of the domicile as the law determining the right of universal succession. The domicile, naturally, must control a succession of that kind. Universal succession is the artificial continuance of the person of a deceased by an executor, heir, or the like, so far as succession to rights and obligations is concerned. * * *

"To come closer to the point, no one doubts that succession to a tangible chattel may be taxed wherever the property is found, and none the less that the law of the situs accepts its rules of succession from the law of the domicile, or that by law of the domicile the chattel is part of a *universitas,* and is taken into account again in the succession tax there. *Eidman* v. *Martinez,* 184 U. S. 578, 586, 587, 592, 46 L. Ed. 697, 702, 704, 22 Sup. Ct. 515. See *Mager* v. *Grima,* 8 How, 490, 493, 12 L. Ed. 1168; *Coe* v. *Errol,* 116 U. S. 517, 524, 29 L. Ed. 715, 717, 6 Sup. Ct. 475; *Pullman's Palace Car Co.* v. *Pennsylvania,* 141 U. S. 18, 22; 35 L. Ed. 613, 616, 3 Inters. Com. Rep. 595, 11 Sup. Ct. 876; *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, 42 L. Ed. 1037, 18 Sup. Ct. 594; *New Orleans* v. *Stempel,* 175 U. S. 309, 44 L. Ed. 174, 20 Sup. Ct. 110; *Bristol* v. *Washington County,* 177 U. S. 133, 44 L. Ed. 701, 20 Sup. Ct. 585; and for State decisions: *Re Romaine,* 127 N. Y. 80, 27 N. E. 759, 12 L. R. A. 401; *Callahan* v. *Woodbridge,* 171 Mass. 595, 51 N. E. 176; *Greves* v. *Shaw,* 173 Mass. 205, 53 N. E. 372; *Allen* v. *National State Bank,* 92 Md. 509, 48 Atl. 78, 52 L. R. A. 760.

"No doubt, this power on the part of two States to tax on different and more or less inconsistent principles leads to some hardship. It may be regretted, also, that one and the same State should be seen taxing on the one hand ac-

82

cording to the fact of power, and on the other, at the same time, according to the fiction that in successions after death, *mobilia sequntur personam* and domicile govern the whole. But these inconsistencies infringe no rule of constitutional law. *Coe* v. *Errol,* 116 U. S. 517, 524, 29 L. Ed. 715, 717, 6 Sup. Ct. 475; *Knowlton* v. *Moore,* 178 U. S. 41, 44 L. Ed. 969, 20 Sup. Ct. 747."

*In re Stanton,* 142 Mich. 491, 105 N. W. 1122, shows that the decedent was a resident of New York, and died owning stock in a national bank, doing business in Detroit, Michigan, and that the State of New York collected an inheritance tax upon all of the property because decedent was domiciled there, but the Michigan court nevertheless held that the bank stock was also liable to an inheritance tax in Michigan, because the bank was located there.

[8] We have treated the case as it was argued, and as though this State is here seeking to collect an inheritance tax on the transfer of shares of national bank stock located in Missouri; but the record shows that under the orders of the Missouri court the bank stock was sold in Missouri, paid for in cash, and that the subject of taxation here involved is not shares of bank stock, but a fund received in cash from the Missouri administrators by the Virginia executors, and brought into this State for distribution to the legatees, to whom pecuniary legacies, not bank stock, are bequeathed by the testator. That this State has the right to impose an inheritance tax upon such a fund, and has exercised it, is clear.

It is unnecessary to discuss alleged defects in the procedure which are relied upon by the Commonwealth, because even if the procedure were not above criticism the result here would be the same, and it is always preferable to decide the merits of a controversy.

The case has been rightly decided.

*Affirmed.*